No. 25,848.

ILLINOIS LIFE INSURANCE COMPANY, *Appellee,* v. WILLIAM F. YOUNG, *Appellant* (J. E. STILLWELL et al., *Appellees*).

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Liability of Indorser—New Notes Collateral to First.* The facts concerning the execution of a second series of promissory notes as collateral to a first series, evidencing the same secured indebtedness, examined, and *held,* that the indorser of the first series of notes was not discharged of liability thereon by reason of the execution and delivery of the second series.

2. SAME—*Judgments—Res Judicata—Elements.* In a cross action against the makers and indorser of a first series of notes secured by a second mortgage on real estate, a defense was interposed that the indorser, in a later action in California by another holder, had defeated a recovery on all except one of a second series of notes pertaining to the same indebtedness, and that in yet another action in California he had obtained judgment awarding him possession of the first series of notes: *Held,* that the essentials of *res judicata* were wanting and the judgments in the California litigation were not a bar to a recovery and judgment on the first series of notes against

the indorser and in favor of a litigant who was not a party to the California litigation and who did not claim under any person bound by the California judgments.

3. COURTS—*Jurisdiction—Parties—Subject Matter.* The issues formed by the pleadings and admissions of the parties, and the fact that the notes and security were not in the possession of the appellee at the time the cause was tried, but were in court in possession of appellant, who had raised an issue of ownership concerning them and had asserted a right to recover thereon in his own behalf and to foreclose the mortgage given as security therefor, considered, and *held,* that the trial court had full jurisdiction of the parties and of the subject matter, and properly entered final judgment in the cause presented by the parties.

4. SAME—*Subsequent Action—Different Jurisdiction.* The commencement of another action in another jurisdiction between the same litigants over the same subject matter, which other action is still pending and undetermined, does not affect the judgment of the court of prior jurisdiction.

Appeal from the Comanche district court; LITTLETON M. DAY, judge. Opinion filed April 11, 1925. Affirmed.

*F. Dumont Smith,* of Hutchinson, for the appellant.

*F. C. Price, F. N. Cossman,* both of Ashland, *Dick H. Rich,* and *Horace Rich,* both of Coldwater, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal is concerned with the rival and adverse interests of parties who were codefendants in a suit to foreclose a first mortgage on a 9,300-acre ranch in Comanche county.

The controversy which is of present concern arose thus: William F. Young sold the ranch to L. D. Alexander, subject to a first mortgage held by the Illinois Life Insurance Company, taking in part payment therefor nine coupon promissory notes of Alexander and wife, aggregating $44,900, dated March 12, 1919, due in five years, bearing 6 per cent interest, and to draw 10 per cent on delinquent interest. These notes were secured by a second mortgage on the ranch.

Before their maturity, Young sold, assigned and transferred these notes to third parties, who in turn transferred them to J. E. Stillwell.

L. D. Alexander sold the ranch to J. E. Alexander, and the latter made default in the payment of interest on these second-mortgage notes, so Stillwell elected to declare the whole debt due and payable and commenced foreclosure proceedings thereon; but these proceedings were halted and dismissed about November 1, 1920, as

a result of a contract between Stillwell and J. E. Alexander by which the latter executed a second series of notes, ten in number, aggregating $49,400, as collateral to the original series. Young indorsed each of this second-series of notes thus:

"The indorsers hereof each waive presentment, protest, notice of protest of nonpayment of this note.                                        W. F. YOUNG."

The written contract, executed on the same date as these new notes, November 1, 1920, among other matters, expressly stipulated that it should not be construed to waive the rights of the holder of the second-mortgage notes, and that if default were made in the payment of interest on either, or if default were made in the first- or second-mortgage debt, or in payment of taxes, then the holder might declare the entire amount secured by said mortgage due and payable.

Stillwell took this second series of notes to California and they passed into divers other hands, with consequences to be referred to later.

On December 2, 1922, the Illinois Life Insurance Company instituted this action to foreclose its first mortgage, making L. D. Alexander, William F. Young, J. E. Stillwell and others defendants. Plaintiff's action was unopposed and it was given judgment as of course.

The issues involved herein were raised by the answer and cross petition of Stillwell (filed December 22, 1922) against his codefendant Young and his codefendants L. D. Alexander and wife, in which Stillwell set up the original series of notes secured by the second mortgage, Young's indorsement, default in payments of interest due thereon and in payment of taxes, the consequences thereof as provided by the second-mortgage contract, and prayed judgment against L. D. Alexander and wife and William F. Young and for foreclosure of the second mortgage.

To this pleading Young filed an answer and cross petition, admitting the execution of the notes and mortgage and his own indorsement thereof, designating the notes sued on by Stillwell as the "first series," and alleging that in November, 1920, J. E. Alexander, who by then had acquired the ranch, had executed and delivered to Stillwell a second series of ten notes, aggregating $49,403, for the purpose of taking up and extinguishing the notes set forth in Stillwell's cross petition. Young alleged that Stillwell had made

misrepresentations to him which had induced him to indorse the second series of notes:

"That this defendant would not have indorsed the second series of notes but for the said statements and promises of the said Stillwell, whereby this defendant was released from any liability upon the said first series of notes sued on herein, and the said Stillwell ought not to have and recover upon said notes herein as against this defendant."

Young further answered that Stillwell had disposed of the second series of notes to third parties, "all of whom but one took the said notes with full knowledge of all the facts," who assigned them to one Fred E. Graham, and that Stillwell had caused Graham to bring suit on such notes against Young in the superior court of Los Angeles county, California; that Young set up the facts in that action and recovered judgment against Graham, except on one of this second series of notes for $5,000, on which judgment had been rendered against Young, and which judgment Young had satisfied. That the Los Angeles lawsuit was an election by Stillwell, and was taken with his full knowledge—

"Whereby the said Stillwell cannot now seek a recovery upon the said first series against this defendant, and the said judgment of the said superior court of said county in said case is *res adjudicata* and has determined all the issues between the said Stillwell and this defendant in favor of this defendant except as set forth in the cross petition herein contained."

Accompanying the foregoing answer, Young presented a cross petition against Stillwell, alleging that by reason of the transfer of one of the second series of notes to an innocent holder, whereby judgment had been entered against Young, and he had been—

"Compelled to and has paid in full, this defendant has become the equitable assignee *pro tanto* of $5,000, with interest, of the said first series of notes sued upon herein by the said Stillwell, and all rights thereunder, including a participating interest *pro tanto* in the said mortgage, and upon a foreclosure thereof and sale of the mortgaged property is entitled to participate in the avails of such sale for a share of the proceeds thereof equally with the said Stillwell, if he recover herein.

"Wherefore, the defendant prays judgment that he have and recover against the said defendant Stillwell upon this his answer. That upon his cross petition he be adjudged to be the equitable assignee and owner of a $5,000 interest, with interest thereon, in the first series of notes and the mortgage securing the same. That he have judgment against the said defendant L. D. Alexander for the said sum of $5,000, and that upon foreclosure of said mortgage this defendant be paid the said sum out of the sale of said property, if sufficient, and if not his *pro tanto* share out of the avails of the said sale, and for such

other and further relief as to the court may seem proper." (Filed July 21, 1923.)

Stillwell filed a reply and answer, in which he made general denial of the allegations of Young's pleadings, except Young's admissions, and alleged that J. E. Alexander and Young agreed with Stillwell that a second series of notes, as collateral, should be executed and indorsed to Stillwell.

"And thereupon, and in consideration of the said agreement made with the said defendants, J. E. Alexander and William F. Young, and in consideration of the execution of said collateral notes, and the indorsement thereof by said William F. Young, this defendant waived the declared default on the mortgage notes set up in his cross petition herein, and did on or about the —— day of December, 1920, dismiss, without prejudice to a further action, the said foreclosure action then pending. . . .

"This defendant further states that said J. E. Alexander, as maker, and William F. Young, as indorser, failed to pay said collateral notes or any part thereof, or any interest thereon, when the same were due and payable, or at any time, and this defendant having transferred and indorsed said notes, action was brought thereon in the superior court of Los Angeles county, state of California, by the holder thereof [Fred E. Graham] against the said William F. Young; that said William F. Young, in said action, set up and wrongfully claimed that he had indorsed said notes on account of certain misrepresentations made to him by this defendant, and that he should be held liable and responsible on the original notes and mortgage only.

"That in the course of said trial and proceedings had in said action said defendant William F. Young took the position and admitted his liability as indorser on said first series of notes set up in this defendant's cross petition herein, and disclaimed any liability on the said collateral notes by reason thereof, and defended said former action set up in defendant's cross petition herein, and is now estopped from claiming nonliability as indorser thereon. . . .

"This defendant admits that judgment was rendered in said former action on one of said $5,000 collateral notes against the defendant William F. Young for the sum of $5,819.44, on June 14th, 1922, in said action in said Los Angeles county, with interest from said date at the rate of seven per cent per annum, . . . and defendant further states that he is now and at all times has been willing and ready to credit any amount paid upon said judgment, or realized or paid upon said collateral notes, on the notes set up in his cross petition herein, and now renews his offer so to do.

"This defendant further states that the pending action is not the same as said former action, and that he was not a party to said former action on said collateral notes, and that the issues therein involved, tried and determined were not the same or identical issues involved in the pending action. . . ." (Filed November 8, 1923.)

The written agreement touching the issue of the second series of notes and stipulating for the dismissal of Stillwell's first suit to foreclose was set out in full. It provided in part:

Illinois Life Ins. Co. v. Young.

"This agreement does in no way waive the rights of the holder of the said mortgage notes except as to the time of payment being extended as herein agreed, and if default be made in the payment of interest or taxes, then the holder may declare the entire amount secured by said mortgage due and payable. If default be made in the payment of the interest on the prior mortgage on said lands, said mortgage indebtedness may be declared due and payable."

To the foregoing pleading of Stillwell, Young filed another answer or rejoinder, admitting the execution of the notes and mortgages set out in Stillwell's cross petition, and alleging—

"Second.  Defendant further answering says: That since the institution of this suit, in a certain cause pending in the superior court of the state of California and for the county of Los Angeles herein, William F. Young was plaintiff and W. I. Traeger, sheriff of Los Angeles county, *et al.*, were defendants. The court duly ordered, adjudged and decreed that this answering defendant was and is the owner of all of the notes set forth in the said Stillwell's cross petition except one note of $5,000, which belongs to a party to that suit named Graham, which said note has since been purchased and taken up by this answering defendant, and that this answering defendant *is now the owner of all of the said notes described in the said Stillwell's cross petition* and is in possession of the same and entitled to recover thereon.  That the said Stillwell has no right, title, interest or right of possession of the said notes and is not entitled to recover herein for the same or any of them."  (Filed December 13, 1923.)

On December 21, 1923, Young also filed herein an answer and cross petition against his codefendants, L. D. Alexander and wife, setting up the original series of notes, and alleged *his ownership* of them, set up the second mortgage given as security, the makers' default, and prayed judgment *in his own behalf* for the full amount and for a decree of foreclosure subject to the superior lien of the first mortgagee.

To Young's last answer or rejoinder of December 13, 1923, Stillwell filed another answer or surrejoinder, on January 4, 1924, which included a general denial, and a specific denial that the superior court of Los Angeles county, California, had decreed that Young was the owner of the original series of notes; alleged that Stillwell was not a party to any such California litigation; that there was no such question of ownership within the issues of this litigation, and that the Los Angeles court had no jurisdiction of the parties or subject matter on which to pronounce such judgment; that if any such judgment in California was rendered it was long after the Comanche county, Kansas, district court had acquired jurisdiction of this cause and of the subject matter and parties hereto, and after Young had entered his personal appearance herein and filed his answer and

cross petition admitting his indorsement of the notes in suit and invoking the jurisdiction of the Kansas court for the purpose of determining his liability as indorser of the notes; that Young's claim of ownership of this first series of notes was inconsistent with the claims and allegations of his answer and cross petition, in which he only claimed to be an equitable assignee to the extent of $5,000 by reason of his having paid, as he alleged, the judgment entered against him in *Graham v. Young* in the Los Angeles court on one of the collateral notes of the second series.

"This defendant [Stillwell] further states that the said notes set up in his cross petition herein, together with the mortgage given to secure the same, were by him delivered to one Fred E. Graham, plaintiff in said action of *Graham v. Young,* to be held by him in escrow and delivered over to the defendant William F. Young, or other parties entitled to the same, on payment in full, both principal and interest, of the ten certain collateral notes representing and covering the indebtedness evidenced by the notes set up in this defendant's cross petition herein. That by the terms of said escrow delivery the said notes were to be surrendered to the said William F. Young only on payment of the said collateral notes, interest and principal in full, and upon no other terms or conditions, to all of which said William F. Young duly consented with full knowledge that his right to the possession of said notes attached only on payment of said collateral notes, which payment he has refused and neglected to make."

The foregoing summary, lengthy as it is, is but a bare outline of the divers and sundry pleadings filed by the litigants to formulate and join issues in this case. But with this preliminary task done, however, it may be discovered as we proceed that the legal problems are not difficult of solution. And first it will be noted that the pleadings outlined above contained several allegations of fact of sufficient importance, perhaps, to turn the scale of this lawsuit if evidence had been adduced thereon, but, happily for our present concern, when the case was called for trial the litigants limited the judicial inquiry to a presentation of certain phases of the California litigation, it being agreed by counsel that but for the possible legal effect of that litigation Stillwell would be entitled to judgment, not only against the Alexanders (not resisted) but against Young as indorser of the notes in suit.

The record reads:

[Counsel for Young:] "I don't know just where the burden lies."

[Counsel for Stillwell:] "I think it can be determined from an answer to this question: Why are we not entitled to judgment against Mr. Young for the full amount of our debt under the pleadings? Why are we not

entitled to judgment for the full amount of our debt upon the notes sued in this Comanche county court now?"

[Counsel for Young:] "Because Mr. Young comes in here with a judgment from the California court adjudging him to be the owner of the notes and mortgage and ordering possession delivered to him."

[Counsel for Stillwell:] "Except for that, we would be entitled to judgment on his indorsement for the full amount of the debt?"

[Counsel for Young:] "That is right; except for the California litigation, Mr. Stillwell would be entitled to judgment if he had possession of the notes."

[Counsel for Stillwell:] "They are in court."

[Counsel for Young:] "The notes and mortgages are in my possession."

Whereupon counsel for Young offered in evidence the findings and judgment in *Young v. Traeger, Graham et al.*, in the superior court of Los Angeles county, California; also the original notes and second mortgage which were the basis of this cross action, and other exhibits of more or less significance. Of this California litigation more anon.

At its conclusion the court said:

"The Court: There is nothing pleaded that your liability as indorser has been reduced or cut off by reason of the failure to give notice of dishonor—you don't claim that?"

[Counsel for Young:] "What I claim is that their demand that these notes and mortgage be brought in and delivered—Young when he had responded to that case and the judgment found in the case, the court ordered them turned over to him as his property."

[Counsel for Stillwell:] "Your whole defense is predicated on the California case?"

[Counsel for Young:] "Yes. Our title to these notes and mortgage is based on the California suit."

Thereupon counsel for Stillwell offered in evidence a transcript of proceedings and record in *Young v. Traeger, Graham et al.*, including copy of complaint and answer in *Graham v. Young*, together with other files, instructions to the jury, etc., in the Los Angeles county superior court.

Judgment was entered herein in favor of Stillwell against L. D. Alexander and wife and William F. Young for the full amount of the notes and interest, less a credit of $6,396.40 paid by Young on October 23, 1923, pursuant to the California judgment in *Graham v. Young*.

Young appeals, assigning certain errors around which his counsel argues two main propositions of law:

1. It is urged that the agreement between Stillwell and J. E. Alexander extended the time of payment of the first series of notes and thereby released Young as indorser, and R. S. 52-902, being section 127 of the negotiable instruments act, is cited on the point.

There are several answers to this contention. Speaking technically, there was no extension of time of payment beyond the due dates. The notes were not due at the time the agreement was made. The defaults which had prompted the foreclosure proceedings by Stillwell in 1920 pertained to the nonpayment of interest and taxes. Furthermore, the agreement was not made with the maker nor with anybody for whom Young stood as indorser or guarantor. It was made with a stranger to the original instruments—with J. E. Alexander, not with L. D. Alexander, the maker and principal obligor on the notes. And again, the statute cited permits the holder of a note to agree to extend the time of payment without discharging a party secondarily liable when "made with the assent of the party secondarily liable." In this case the indorsement of the second series of notes by Young is sufficient to show his assent. True, in one of his sundry pleadings Young did make an allegation that his indorsement of the second series was obtained through misrepresentation and fraud, but as no proof was forthcoming to support that allegation it must be disregarded. Young's assent to an extension of time on the first series of notes and his consequent undischarged liability on the first series of notes was the main feature of Young's defense when he defeated a recovery on all except one of the second series of notes in the Los Angeles superior court, in *Graham v. Young*. In the transcript of proceedings, where the proper terms to be formulated into the judgment in that case were being considered by the California court, the record reads:

"The Court: Why, is there any doubt about his personal responsibility on those original notes? You are not questioning it, are you? [Addressing counsel for Young.]

[Counsel for Young:] "No."

Young has never pleaded nor has he hitherto raised the question of his discharge as indorser on the ground now urged in this appeal. On the contrary, the trial court was at pains to assure itself that appellant did not rely on any right of discharge as indorser conferred by statute. See colloquy of the Comanche county district court and counsel set out above.

2. The next contention of appellant relates to the effect of the California litigation. Counsel for appellant states the question thus:

"Were the judgments in the two cases of *Graham v. Young* and *Young v. Traeger*, taken together under all the circumstances, *res judicata* as to Young's ownership as to the first series of notes?"

Properly to solve this problem it is desirable to keep in mind just what essential attributes common to a prior adjudication and to subsequent pending litigation will support a plea of *res judicata*. In *Benz v. Hines and Tarr*, 3 Kan. 390, it was said:

"To make a matter *res judicata* there must be a concurrence of, *first,* identity in subject matter; *second,* in the cause of action; *third,* of the persons and parties; and *fourth,* in the quality in the persons for or against whom the claim is made." (Syl. ¶ 3. See, also, *Hayes v. Insurance Co.,* 104 Kan. 230, 232, 178 Pac. 432.)

Let us apply this test to *Graham v. Young* and the case here. Graham came into possession of the ten notes of the second series and brought an action thereon against Young in California. Young answered, pleading, among other defenses, his liability on the first series of notes. While this action was pending, the ten notes of the first series were delivered to Graham, so that if Young paid the second series, or if Graham were given judgment on the second series of notes, the first series might be surrendered to Young for his future protection against having to pay the two full series of notes representing but one indebtedness and one liability, and Graham brought them into court for that purpose. Judgment was entered in favor of Graham on but one of the notes of the second series, and in favor of Young on the other nine. The notes of the first series remained in the custody of the court undisposed of.

Afterwards, and while the foreclosure proceedings in the district court of Comanche county, Kansas, were pending, and after issues had once been joined herein between Stillwell and Young on the cross action now under review, Young commenced an action in California against William I. Traeger, the sheriff of Los Angeles county, and against the clerk of the superior court, and against Graham, entitled *Young v. Traeger et al.,* in which he outlined the issues of the case of *Graham v. Young* over the second series of notes, and alleged that Graham had then been in possession of the first series of notes and the mortgage securing them, and Graham—

"Tendered said bonds or notes, and the mortgage securing them, together with a release and satisfaction of said mortgage, to the clerk of the superior

court, in order that they might be delivered to the defendant W. F. Young when he had responded with the relief to the plaintiff as demanded in plaintiff's complaint therein.

"Plaintiff [Young] herein further alleges that all of said notes and mortgage securing the same, together with a release and satisfaction of said mortgage, are now and have been since the tender of the same in open court, in possession of the clerk of the superior court of Los Angeles county."

Young further alleged the result of *Graham v. Young*, the judgment in favor of Graham on one note and in favor of Young on the others; that Young had filed a motion in that action to have the original series of notes delivered to him, and that such motion had been denied, with a suggestion of the trial judge that Young's right of possession to the first series of notes might be the subject of a separate action; that there had been no consideration for the second series of notes, and that the judgment against Young on one of the notes "was based purely on the legal grounds that the owner of said note had purchased the same for value before maturity and without notice of its defects"; that Young was ready and willing to pay the judgment rendered against him in *Graham v. Young*, but that he was entitled to—

"A delivery to him of the original notes and mortgage, together with a release thereof, rendered to him in said cause . . . [*Graham v. Young*], in order that he may reimburse himself for the payment of said money, and plaintiff further alleges that he does now tender into this honorable·court the said sum of $6,227.80, which represents the full and complete amount of said judgment, together with all costs and interest thereon accrued, in order that he may have delivered to him, for reimbursement to himself, the various notes, mortgages and releases of mortgage tendered in said original cause.

. . .

"Wherefore, plaintiff prays that . . . upon final hearing he have judgment . . . directing the clerk of the court to receive for the use and benefit of the said Fred E. Graham the sum of $6,227.80, and . . . the said clerk be directed to deliver to the said Young, and take his receipt therefor, said original notes, the mortgage and the release of mortgage, in order that the said Young may avail himself of any benefits which might accrue to him by reason of the possession of said notes and mortgage, in order to reimburse himself as an indorser upon notes theretofore fraudulently obtained from him."

In *Young v. Traeger*, Graham filed an answer containing various denials and admissions, and set out *in hæc verba* the terms under which the original series of notes had been intrusted to him and under which he had brought them into court in *Graham v. Young*, which read: "[Graham] brings said notes [the first series of notes]

and mortgages securing same for the purpose of delivery to the defendant W. F. Young when said ten promissory notes [second series] have been paid in full, principal and interest"; and Graham alleged that none of the conditions had been performed, not then even as to the one note on which Graham had obtained judgment. Graham further alleged that the holder of the first series of notes had intrusted them to him—

"For the sole reason that it was his belief that if the second series of notes . . . should be paid and satisfied in full the person paying the same would be entitled to be subrogated to the security offered by the first series of notes, being the security on the Kansas property; and that plaintiff alleged in said complaint that he had possession of said first series of notes and mortgage for the purpose only of surrender to said parties who might pay in whole, both principal and interest, all of the ten notes sued upon; that said ten notes have not been paid either in whole or in part; that the validity or invalidity of said first series of notes and mortgage securing the same was not made an issue or tried or determined in said suit."

On these issues the cause was tried before the superior court of Los Angeles county. The court made findings of fact, including—

### VI.

"The court further finds that [in Graham v. Young] . . . the plaintiff Fred E. Graham, being then and there in possession of the first notes and mortgage, rendered said bonds or notes and mortgage securing them, together with a release and assignment of said mortgage, to the clerk of the superior court in said department 14, in order that they might be delivered to the defendant W. F. Young when he had responded to the relief which the plain tiff demanded under the issues in said cause.

### VII.

"The court further finds that all of said notes and the mortgage securing the same, together with the release, satisfaction or assignment, are now and ever since the tender of the same in open court have been in the possession of the clerk of the superior court of Los Angeles county. That said cause of Graham v. Young . . . proceeded to a verdict and judgment, . . . resulting in a verdict in favor of the defendant upon eight of the promissory notes described in said complaint, and in a verdict in favor of plaintiff Graham and against Young in the sum of $5,000, together with costs and interest. . . .

### X.

"The court further finds that the plaintiff was, at the time of the filing of his complaint, and has at all times, been ready, able and willing to pay the full amount of said judgment and costs, and did, prior to the filing of said complaint, tender to the said L. E. Lampton, clerk of the superior court of Los Angeles, the full sum of $6,227.80, said sum representing the full amount of said judgment of five thousand dollars ($5,000.00) together with interest

and accrued costs, and demanded that there be delivered to him, the original notes and mortgage, and release and assignment of mortgage as tendered in cause [*Graham v. Young*].  .  .  .

"Conclusions of Law.

"The court finds that the plaintiff has no adequate remedy at law.

"The court finds that plaintiff is entitled to judgment directing the clerk of this court to receive, for the use and benefit of the said Fred E. Graham, the sum of $6,227.80, together with interest thereon from date of said tender, in the sum of $168.60, or a total of $6,396.40; that the said clerk of the court should deliver to the said Young, and take his receipt therefor, the original notes, mortgage and release and assignment of mortgage."

On October 22, 1923, judgment in the superior court was entered accordingly.

Does the foregoing abridged narrative of the California litigation present a good plea to operate as *res judicata* in the Comanche county litigation?

So far as *Graham v. Young*, it certainly does not. In *Graham v. Young* the action was on the second series of notes; this action is on the first series of notes. The identity of the cause of action, with great liberality, might have been said to be the same—the original debt—but that Young prevailed against Graham on nine of the ten notes of the second series because of his undischarged liability on the first series of notes and apparently on his plea of want of consideration for the second series. So there was a want of identity in the cause of action. Neither was there identity of the parties. While counsel for Young argues as if Stillwell were a party to the California litigation, such talk is gratuitous and goes for nothing.

Neither does the California judgment in *Young v. Traeger, Graham et al.*, meet any of the tests of *res judicata*. *Young v. Traeger* was an action for possession of the first series of notes and their security for the alleged purpose of enabling Young to reimburse himself for his payment of the judgment in *Graham v. Young* on one of the second series of notes. There was no issue of ownership nor was there a judgment touching ownership; and if there had been such an issue and judgment concerning ownership, it would only have been conclusive on the parties to the litigation. It would not have been conclusive on Stillwell. This court is bound to hold that the California litigation was no bar to this cross action either as *res judicata* nor by way of estoppel.

3. The next assigned error questions the propriety of giving judg-

ment for Stillwell on the first series of notes when they were not in his possession, but were in the physical possession of Young and his counsel, they having been delivered to Young by the clerk of the superior court of Los Angeles county pursuant to the judgment in *Young v. Traeger.*

It cannot be discerned why that circumstance should have required the Comanche county district court to withhold and deny justice and judgment in the cause before it. It had jurisdiction of the parties and of the subject matter. The notes and security were in court, in *custodia legis.* Stillwell's cause was fully pleaded—the execution of the notes and mortgage by the Alexanders to Young; Young's assignment and transfer of them to third parties and their subsequent sale and assignment to Stillwell; the default of the makers, and "that defendant William F. Young claims some interest, lien or right in said notes and mortgage herein set up, but this defendant (Stillwell) alleges that any interest, lien or right said defendants or any of them may have is second and subsequent to the amount due this defendant."

In Young's answer and cross petition thereto he did not traverse that allegation, but, on the contrary, he admitted the execution of the notes and his own indorsement of them, set up the California litigation of *Graham v. Young* and the resulting judgment therein, where he was adjudged to pay $5,000 and interest and costs on one of the second series of notes, and claimed to be entitled to the rights of an equitable assignee *pro tanto* on the first series of notes in suit. Some months later, December 13, 1923, Young did file a later pleading, in which he alleged that in the second California action, *Young v. Traeger,* it had been decreed that—

"This answering defendant [Young] was and is the owner of all the notes set forth in Stillwell's cross petition, . . . and that this answering defendant *is now the owner of all of said notes* described in the said Stillwell's cross petition and is in possession of the same and entitled to recover thereon. That the said *Stillwell has no right, title, interest or right* of possession of the said notes and is not entitled to recover herein for the same or any of them."

Stillwell filed a pleading which traversed Young's allegations as above, and issues were joined thereon. And of course the California judgment was not fairly susceptible of an interpretation as a decree vesting ownership in Young; and if it were, Stillwell was not bound by that judgment. But in view of such an issue raised by Young himself, how far beside the mark is the contention of his

21—118 KAN.

counsel that "none of the pleadings in this case gave the court below the right to try the title to these notes." Moreover, if the pleadings had insufficiently joined issue on that point, under our practice and in so far as its determination was necessary to a proper adjudication of the matters in litigation, the pleadings would be deemed to have been informally amended to that end. (*Custer v. Royse,* 104 Kan. 339, 343, 179 Pac. 333; *Lumber Co. v. Mercantile Co.,* 114 Kan. 17, 216 Pac. 284; *Lyons v. Petroleum Co.,* 114 Kan. 136, 215 Pac. 278.) And again: In this very litigation Young not only asserted his ownership of the notes in one of his later pleadings against Stillwell, but he actually had the temerity to file a cross petition against his codefendants, the Alexanders, setting up these original notes, alleging his ownership of them, the makers' default, and prayed judgment in his own behalf and for a decree of foreclosure of the second-mortgage security. In California, to defeat the second series of notes Young had pleaded and conceded his liability on the first series. In California he obtained possession of the first series to insure to him protection *pro tanto* for what he did have to pay on the second series. Then he came into court in Kansas, first praying for an assignee's interest *pro tanto,* and eventually asserting unqualified ownership. Appellant's position is this: He indorsed two series of notes, but would pay neither, or but a mere fraction of one, and attached such a virtue to that as to make him owner of them all. The trial court had every requisite of jurisdiction to enable it to render the judgment under review.

4. A belated supplemental abstract and brief is filed by appellant, which shows that Stillwell has lately instituted an action in California against Young to recover on the notes which are the subject matter of the present cross action between them. That action has not yet been tried; it is set down for trial on June 26, 1925. That action is of no present consequence (*O'Reilly v. Railroad Co.,* 16 R. I. 388, 6 L. R. A. 719), although the present judgment may be effectively pleaded as a bar to that action (1 R. C. L. 16), if Young is so advised. The present action was virtually concluded ere the last action in California was begun; and indeed from the inception of the present litigation, *i. e.,* from the filing of the cross action between Stillwell and Young, and acquisition of jurisdiction of the parties and subject matter by the Comanche county district court, it is not easy to see how any other court, anywhere, could have effectively intruded so as to prevent the Kansas court from making a full and final adjudication of all the matters in controversy

between Stillwell and Young over the first series of notes and Young's liability thereon. (*Hepner v. Hepner*, 115 Kan. 647, 648, and citations, 223 Pac. 1095.)   When the Comanche county district court gave Young proper credit herein for the sum he had been adjudged by the Los Angeles court to have to pay on one of the notes of the second series, the full measure of justice to which he was entitled was accorded him, and satisfied every purpose of the California court in bestowing possession of the first series of notes on him as against his adversary in that litigation.   There is neither error of law nor miscarriage of justice in the judgment of the district court of Comanche county.

The judgment is affirmed.