No. 29,752.

Archie C. McFall, *Appellee*, v. Walter Ford, as Sheriff, etc., and Katie E. Thomas, *Appellants*.

(1 P. [2d] 273.)

Opinion filed July 3, 1931.

*Mayo Thomas*, of Los Angeles, Cal., for the appellants.

*A. C. Malloy, Roy C. Davis* and *Warren H. White*, all of Hutchinson, for the appellee; *Oscar F. Perkins*, of Elkhart, of counsel.

The opinion of the court was delivered by

Burch, J.: The action was one by a landowner who had redeemed from a sale made in a foreclosure suit, to enjoin sale of the same land on execution by a judgment creditor who was not a party to the foreclosure suit, and whose judgment became a lien on the day the foreclosure judgment was rendered. Plaintiff prevailed. The sheriff, nominally interested, and Katie E. Thomas, the judgment creditor and real party in interest, appeal.

The Federal Land Bank of Wichita commenced actions in the district court of Morton county, numbered, respectively, 2297, 2298 and 2299, to foreclose separate mortgages on separate tracts of land owned by the mortgagor, M. C. Combs. On September 3, 1928, judgment was rendered in each case in favor of the Land Bank and against Combs for the sum due and for foreclosure of mortgage. Mrs. Thomas held a second mortgage on the land involved in case 2297, and was made a party defendant in that suit. On September 3, 1928, when the Land Bank judgment was rendered in case 2297, Mrs. Thomas recovered a personal judgment against Combs, and judgment for foreclosure of mortgage. Afterwards the land in-

volved in case 2297 was sold, with the result that no part of the judgment of Mrs. Thomas against Combs was satisfied. At the time the suits in cases 2298 and 2299 were filed, Mrs. Thomas had no lien of any kind on the tracts involved in those suits. It was neither necessary nor proper to make her a party defendant in those suits, and she was not made a party. When, however, the personal judgment against Combs was rendered in her favor in case 2297, the judgment became a lien on the tracts involved in cases 2298 and 2299, by virtue of R. S. 60-3126. The tracts involved in cases 2298 and 2299 were sold pursuant to the foreclosure judgments in favor of the Land Bank. The bank purchased at the sales for the amount of its judgments, interest, and costs, and received certificates of purchase. Combs conveyed to McFall. The conveyance effected transfer to McFall of Combs' right to redeem, and McFall redeemed within twelve months after the sale. After expiration of eighteen months from date of sale Mrs. Thomas caused execution to be issued on her judgment, and levied on the redeemed tracts. This action was commenced to enjoin further proceedings under the writ, with the result stated.

When the district court enjoined the second sale, the court applied the statute enacted in 1893, which reads as follows:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for." (R. S. 60-3460.)

It will be observed the quoted section does not apply to liens superior to the lien under which the land is sold; as, for example, to the lien of a first mortgage when the sale is made under foreclosure of a second mortgage. In such cases the land may be sold again to satisfy the superior lien.

The first question which arises under the quoted statute is whether the judgment lien in favor of Mrs. Thomas in case 2297 was inferior to the lien of the judgments in favor of the Land Bank in cases 2298 and 2299. As indicated, all three judgments were rendered on the same day, and all of them became judgment liens on all lands of Combs from the first day of the term of court at which the judgments were rendered. The liens of the Land Bank did not, however, originate in its judgments. Its judgments merely enforced mortgage liens in existence before the foreclosure suits were com-

menced. Mrs. Thomas' lien originated in her judgment, and the Land Bank liens were necessarily superior to the lien which Mrs. Thomas acquired.

The next question is, Did Mrs. Thomas have a right to redeem? The question is answered by the following, among other provisions of the redemption law:

"For the first twelve months after such sale, the right of the defendant owner to redeem is exclusive; but if no redemption is made by the defendant owner at the end of that time, any creditor of the defendant and owner whose demand is a lien upon such real estate may redeem the same at any time within fifteen months from the date of sale. A mechanic's lien, before decree enforcing the same, shall not be deemed such a lien as to entitle the holder to redeem." (R. S. 60-3440.)

"Any creditor whose claim becomes a lien prior to the expiration of the time allowed by law for the redemption of creditors may redeem. A mortgagee may redeem upon the terms hereinafter prescribed before or after the debt secured by the mortgage falls due." (R. S. 60-3441.)

"A junior judgment creditor or lien holder may redeem from a senior judgment creditor or lien holder by paying to the party himself or to the clerk of the district court the full sum due said senior creditor or lien holder, with interest and costs, and shall become thereby vested with full title to the judgment so redeemed from and to all the liens of such judgment." (R. S. 60-3446.)

The language of R. S. 60-3440 is not "Any creditor of the defendant and owner whose demand has been adjudicated to be a lien" may redeem; the language is "Any creditor whose demand is a lien" may redeem. The fact that a creditor whose demand is a lien may redeem although it has not been adjudicated to be a lien, is made perfectly clear by the last sentence of the section, which requires an adjudicated lien in just one instance. A mechanic's lien, although a lien in fact, is not regarded as a lien entitling the holder to redeem until a decree enforcing the lien has been rendered. This provision shows the legislature had specifically in mind and specifically dealt with the distinction between adjudicated liens and liens existent in fact but not adjudicated to be such.

Having drawn the distinction between existing liens in fact and adjudicated liens in R. S. 60-3440, R. S. 60-3441 proceeds to say, without qualification, that any creditor whose claim becomes a lien before expiration of the time allowed for redemption by creditors may redeem. The section was interpreted in the case of *In re Estate of Wood,* 118 Kan. 548, 235 Pac. 864, as follows:

"A general unsecured creditor of the debtor whose land is sold on execution or order of sale under mortgage foreclosure is not permitted to subject the right of redemption to the payment of his claim. By putting the claim in judgment before the expiration of the period of redemption and thereby acquiring a lien on the debtor's nonexempt real estate, he becomes entitled, not to have the right of redemption sold and the proceeds applied to it, but to redeem for himself if the debtor does not do so within a year. (R. S. 60-3441.)" (p. 550.)

R. S. 60-3442 provides that creditors having a right to redeem, may redeem from each other. R. S. 60-3443 then prescribes the terms of redemption from a mortgage or other lien holder whose claim is not yet due. This section has been amended in important particulars (R. S. Supp. 60-3443). There is no room for interpolating into either the original or the amended section a proviso that, without ground for suit against the landowner not in default, the creditor must nevertheless have gotten a judgment, somewhere and somehow, establishing his unmatured claim as a lien, before he can redeem. R. S. 60-3446 prescribes the terms for redemption by a junior judgment creditor, and there is no hint that the junior judgment creditor must have two judgments to enable him to redeem, one the judgment which the law itself made a lien, and then a second judgment that his judgment lien is a lien.

In this instance, on September 3, 1928, Mrs. Thomas put her claim against Combs in judgment. Whether there was a dispute about her claim does not appear. Whether a dispute did or did not exist, the claim was adjudicated. It required no further judgment to make the personal judgment against Combs a lien on the land in cases 2298 and 2299, and it required no execution or seizure under execution to create the lien. The statute not only declared the judgment was a lien, but dated the lien back to the beginning of the term at which the judgment was rendered. When the tracts in cases 2298 and 2299 were sold to the Land Bank, Mrs. Thomas was a creditor of the landowner whose demand was a lien, and was a judgment creditor who had a right to redeem. By doing so Mrs. Thomas would not only have become entitled to an assignment of the certificate of sale issued to the Land Bank (R. S. 60-3452), but she would have become legal assignee of the Land Bank's judgments, including the lien of those judgments on any other land Combs might have.

The result of the foregoing is, the legislative intention is expressed with such definiteness and clarity that it is idle to debate existence

of Mrs. Thomas' right to redeem from the sales to the Land Bank in cases 2298 and 2299.

The owner redeemed within the preferential period of twelve months, and Mrs. Thomas had no opportunity to exercise her right to redeem. This fact did not exclude her from the class of lien holders having right to redeem within fifteen months. This subject was considered at length in the opinion in the case of *Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406. The facts in the Lanyon case were that a lumber company obtained judgment against a smelting company, execution was issued on the judgment, the land was sold, and the sale was confirmed. The smelting company assigned its right of redemption, and the assignee redeemed within the exclusive twelve months' period. Soon after sale and confirmation, and within the twelve months' period, another creditor obtained judgment against the smelting company. After redemption by the landowner from the sale under the first judgment, execution was issued on the second judgment, and the land was again sold. The district court denied a motion to confirm the second sale, and allowed a motion to set aside the second sale. The judgment of the district court was affirmed by this court, on the ground the second sale was contrary to the provisions of R. S. 60-3460. It is not necessary to reprint the opinion here. The decision has stood for almost thirty-one years as a correct interpretation of the redemption law of this state, unqualified by judicial decision and unmodified by legislative enactment.

Mrs. Thomas cites the case of *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339. In that case a mortgagee commenced an action to foreclose. There was on the record what appeared to be a second mortgage. The second mortgagee was not made a party. The syllabus reads:

"Where a senior mortgagee brought suit, foreclosed his mortgage and purchased the property at sheriff's sale, not having made a junior mortgagee a party: *Held*, (a) the junior mortgagee's rights were not affected by the proceedings; (b) the junior mortgagee was not barred for failure to redeem the land, and an action by the senior mortgagee afterwards to quiet title against the junior mortgagee was of no avail." (¶ 1.)

The opinion casually refers to but does not analyze or discuss R. S. 60-3440, 60-3441, 60-3442 and 60-3460, and casually refers to but does not analyze or discuss the opinion in *Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406, or the opinion in *Gille v. Enright*, 73 Kan.

245, 84 Pac. 992, which applied the decision in the Lanyon case. The opinion then says:

"The statutes and cases cited above are not applicable here, because the rights of the junior mortgagee were not adjudicated. The junior mortgagees were not parties to the foreclosure proceedings. We are of opinion that the legislature in the enactment of the statutes above cited contemplated liens adjudicated as such, and this court, in construing such statutes, considered the rights of lien holders which had been determined—those about which there was no question. The question might very properly arise as to whether a junior mortgage was a lien, whether it had been paid, or whether barred by the statute of limitations, etc., therefore there is always a question to be determined whether an alleged lien is actually a lien." (*Stacey v. Tucker,* 123 Kan. 137, 138, 254 Pac. 339.)

So, we have in this Stacey case an admission that the liens in the Lanyon and Gille cases were liens which had been determined; that is, about which there was no question; that is, which had been adjudicated in a sense which satisfied the requirement of the Stacey decision. Of course, the junior judgment creditor in the Lanyon case was not a party and could not be a party to the action in which the senior judgment creditor obtained judgment, any more than Mrs. Thomas could have been a party in cases 2298 and 2299. But the claim of the junior creditor was put beyond question and made a lien—adjudicated—just as the existence and validity of Mrs. Thomas' claim was put beyond question and made a lien—adjudicated—by the judgment in her favor which the statute instantly made a lien dating from the commencement of the term of court at which the judgment was rendered. To omit such liens would be to emasculate the statute, and there is not a word in any decision of this court previous to the decision in the Stacey case indicating such an intention.

The decision in the Stacey case involved merely an undetermined claim of second-mortgage lien, which might or might not be a valid claim. It did not involve a finally adjudicated claim which was indisputably a lien by virtue of court judgment and statute. The soundness of the decision in the Stacey case as a determination of the specific controversy in that case, is not a matter of present concern.

In the case of *Sigler v. Phares,* 105 Kan. 116, 181 Pac. 628, a second mortgagee was a party to an action to foreclose a first mortgage. The defense of payment was interposed, so that the second mortgagee did not obtain judgment until after sale under the judgment foreclosing the first mortgage. The landowner redeemed

within the exclusive period. Subsequently, and within fifteen months from date of sale, the second mortgagee attempted to redeem. This court held his attempt was unavailing. In the course of the opinion some seeming verbal difficulties in the statute were adverted to, and it was said:

"Yet a judgment obtained after the sale, which gives a lien upon the real estate of the debtor owner, is held by this court to confer a right to redeem. (*Case v. Lanyon,* 62 Kan. 69, 61 Pac. 406; *Gille v. Enright,* 73 Kan. 245, 84 Pac. 992.) And such is the practice elsewhere. (See *Falbe v. Caves,* 151 Wis. 54; *Brown v. Markley,* 58 Ia. 689.)" (p. 119.)

The disadvantage of the second mortgagee in protecting himself from loss of the fruits of his lien by bidding at the sale before his lien was established, was adverted to, and the court said:

"Except for the disadvantage referred to, which appears to be a necessary consequence of the statute, and to be in accordance with the general statutory purpose of protecting primarily the interests of the owner whose land is sold on execution or order of sale, the second mortgagee was left in just as favorable a situation as though his lien had been confirmed as a part of the original judgment foreclosing the first mortgage. By exercising his exclusive right to redeem within twelve months after the sale, the owner obtained a title freed from the claim of the second mortgagee, by virtue of the provision of the statute that, [quoting R. S. 60-3460]." (p. 120.)

In this instance Mrs. Thomas was not at any disadvantage in bidding at the sale, if she desired to do so. Her judgment giving her a lien was rendered the same day the judgments under which the land was sold were rendered.

The opinion in *Sigler v. Phares* concludes as follows:

"The sale was legally made, and the statute gives the owner of the fee the right to redeem by paying the amount of the bid. The exercise of that right cut off the remedy of the second mortgagee against the land. His loss results from the property having brought at the sale no more than the amount of the first lien." (p. 121.)

Mrs. Thomas did not bid at the sale, and her loss results from the fact that the land did not sell for enough to satisfy her judgment as well as the Land Bank judgment.

The counter abstract shows that at the trial it was stipulated the files, records and proceedings in the Land Bank cases should be received in evidence. They are not abstracted, and the court sent for the journal entries of judgment and the orders of sale. The journal entry and order of sale in case 2298 and in case 2299 show that surplus was ordered brought into court to abide further decision of the court.

If the land had sold for more than the Land Bank's lien, Mrs. Thomas would have been entitled to the surplus, to the extent of her lien, on application to the court for disposition of surplus to her as a judgment lien holder. Questions frequently arise with respect to who is or has become entitled to surplus in the hands of the court, and it has always been a feature of equity practice to determine such claims on applications in various forms for distribution of surplus. Normally, on foreclosure of a mortgage, all holders of inferior liens are made parties, and on foreclosure sale the proceeds of sale stand for the land, for distribution among lien holders, whose liens are cut off by the sale. Before the redemption law was enacted, if an inferior judgment lien holder was not made a party to the suit, his lien was not affected, and he could still enforce it. Under the redemption law, such liens are cut off the same as if the lien holders had been parties to the suit.

In the case of *Johnston v. Wear*, 110 Kan. 237, 204 Pac. 141, an action was commenced in the district court of Thomas county to foreclose a mortgage, and the action proceeded regularly to judgment and sale. About the time the foreclosure suit was commenced a creditor commenced an independent action in the United States district court for the district of Kansas, and attached the land. After the sale in the foreclosure suit judgment was rendered in the attachment suit, and the land was again sold. It was held the lien of the attachment was cut off by the foreclosure sale, and the federal court sale conveyed nothing. After noting that the attachment lien dated from the time the land was attached, the court said:

"Section 478 of the code of civil procedure [now R. S. 60-3441] in part reads:

"'Any creditor whose claim becomes a lien prior to the expiration of the time allowed by law for the redemption of creditors may redeem.'

"F. E. Wear being a creditor and holding a lien inferior to the mortgage in the foreclosure action had the right to redeem the property from the sheriff's sale in that action. Section 497 of the code of civil procedure [now R. S. 60-3460] now becomes very material. That section reads:

"'Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for.'

"The sale of the real property under the judgment in the federal court was made in violation of this statute. No right was given by that sale, nor was any title conveyed by the deed issued under it. In *Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406, this court said: [Quotation.]

"To the same effect is *Gille v. Enright,* 73 Kan. 245, 84 Pac. 992." (*Johnston v. Wear,* 110 Kan. 237, 241, 242, 204 Pac. 141.)

Since inferior judgment liens are cut off by the sale, surplus takes the place of the land, and the lien holders may apply for distribution of proceeds of sale to them. Besides that, equity always had, and still has, power to do what ought to be done, and whenever surplus, standing for the land to which the lien attached, ought in equity to be distributed to lien holders, it may be distributed to them, on application to the court having control of the surplus. This is the very purpose and object of reserving, in judgment and order of sale, power to dispose of surplus.

In the case of *Ellis v. Southwell,* 29 Ill. 549 (1863), the syllabus reads:

"It is the practice in foreclosing a mortgage, to make all encumbrancers parties, and for the decree of foreclosure to ascertain and settle the rights of all the parties, to decree the payment of the mortgage debt, and on default the sale of the mortgaged premises, and the application of the proceeds to the payment of each encumbrancer, according to priority. But on such sale, the surplus remaining after payment of the mortgage debt, may be disposed of, on application, to an encumbrancer not a party to the suit, if it appears that he is entitled in equity to receive it."

In the case of *Montague v. Marunda,* 71 Neb. 805 (1904), the syllabus reads:

"Upon the foreclosure of a mortgage, and a sale and confirmation thereunder, if a surplus remains after the payment of the mortgage debt and costs, the district court, in its equitable jurisdiction, has full power, upon an application being made for a distribution of the surplus, to bring in all parties necessary to a determination of the ownership of the fund, and to try and determine that question." ( ¶ 2.)

In the opinion it was said:

"To voluntarily relinquish its jurisdiction over the fund, which was in its possession, would be to surrender one of the most beneficial powers of a court of chancery." (p. 809.)

The jurisdiction was taken for granted in the case of *In re Estate of Wood,* 118 Kan. 548, 235 Pac. 864. In that case, after the death of a mortgagor owner the mortgage was foreclosed and the land was sold subject to redemption. In discussing the situation of unsecured creditors the court said:

"When the debtor dies owing a general creditor whose claim has not been placed in judgment a new situation is created. The creditor no longer has a personal demand against anyone, but he has acquired a right to look for payment to the property the decedent owned at his death, including the realty if

necessary. This right is not technically a lien, but it is quite similar to a lien. It gives him who possesses it much the same means for his protection as though he had one. By seeing to it that the land when sold by the sheriff brings its full value, he can insure the application of the surplus over the mortgage debt to his own claim." (p. 550.)

In this instance Mrs. Thomas had no interest in or lien upon the land in cases 2298 and 2299 when those actions were commenced, and of course she was not a party to them. On the day judgments were rendered in those cases she acquired her judgment lien on the land involved in those cases. By virtue of the statute her right to enforce her lien after the sale was cut off by the sale as effectively as if she had been a party to the foreclosure suits. In that respect she was in the same position she would have occupied if she had been a party, and the proceeds of sale stood for the land. Combs had no equitable right to surplus as against Mrs. Thomas' unsatisfied judgment lien, and had there been a surplus it could have been applied to satisfy the lien on motion of Mrs. Thomas for an order to that effect. The same principles and procedure would have applied if Mrs. Thomas had attended the sale and had bid a sum sufficient to satisfy the judgment of the Land Bank and her own judgment lien.

In the case of *Pool v. Gates,* 119 Kan. 621, 240 Pac. 580, Gates foreclosed second mortgages, and purchased the land at the sale. He bid the amount necessary to satisfy his judgments, plus a sum sufficient to cover advancements he had made to prevent foreclosure of superior mortgages. Gates proved these advancements, but it was held the surplus above the sum necessary to satisfy the judgments for which the land was sold should be paid to the landowner.

In the Pool case the writer concurred in the general proposition of law stated in the syllabus: foreclosure, sale, confirmation, debt satisfied, taxes and costs paid, surplus to debtor. This is the customary routine referred to in *Blandin's Adm'r v. Wade,* 20 Kan. 251, 255, and cited in the majority opinion. The writer dissented from what he regarded as the unconscionable refusal to allow Gates, on application, to be reimbursed out of surplus for his advancements to protect Pool against foreclosure of first mortgages, and to protect Gates' second lien. The abstract of record in the case shows that the judgment and order of sale required surplus to be paid into court, to be paid out as the court should direct. So the court by its own order had control over the surplus. The terms of the judgment and order of sale were not urged upon or considered by the court.

R. S. 60-3423 was cited as a basis for the Pool decision. It reads:

"If on any sale made as aforesaid there shall be in the hands of the sheriff or other officer more money than is sufficient to satisfy the writ or writs of execution, with interest and costs, the sheriff or other officer shall on demand pay the balance to the defendant in execution or his legal representatives."

This is section 457 of the civil code of 1859, and has been carried in all subsequent revisions of the statutes. It applies only to cases in which there is a seizure or levy, in which the sheriff is vendor, acting under statutory power, and in which, as a consequence, the execution debtor may demand surplus of him. It has no application to judicial sales, and particularly to judicial sales made under judgment and order of the court reserving to the court itself disposition of surplus. This is demonstrated by the context.

The section is now a part of the article, framed by the revisors and adopted by the legislature of 1923, relating to executions. The subdivision deals with executions against property. The subdivision begins with R. S. 60-3403, which reads:

"Lands, tenements, goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold, as hereinafter provided."

R. S. 60-3423, already quoted, applies to sales made "as aforesaid." Therefore, by every recognized rule of statutory construction, the meaning of the section, so far as it relates to sales of real estate, is to be determined by what is found between R. S. 60-3403—"as hereinafter provided," and R. S. 60-3423—"any sale made as aforesaid."

R. S. 60-3403 relates to lands, tenements, goods and chattels liable "to be taken"—that is, seized—on execution. R. S. 60-3404 relates to property bound from time of seizure. R. S. 60-3405 relates to dormancy of judgment. R. S. 60-3406 relates to the contents of a general execution on which the amount of debt, damages and costs for which judgment was entered shall be indorsed. R. S. 60-3407 relates to order of satisfaction when there is more than one writ. R. S. 60-3408 relates to levy, first on goods and chattels, and then levy on land. R. S. 60-3410 relates to levy on property claimed by third persons. R. S. 60-3411 relates to forthcoming bonds when property levied on is unsold. R. S. 60-3412 relates to notice of sale of personal property levied on. R. S. 60-3413 relates to levy on lands in certain cases, and appraisement. R. S. 60-3414 relates to limitation of lien on lands levied on. R. S. 60-3415 relates to levies on property of certain public officers. R. S. 60-3416 relates to notice of sale

of lands "taken on execution"—that is, seized. R. S. 60-3417 relates to prepayment of costs when the officer levies on goods, chattels, or land. R. S. 60-3418 relates to demand for fees referred to in R. S. 60-3417. R. S. 60-3419 relates to place of sale, and forbids bidding by certain persons. R. S. 60-3420 relates to alias executions for land levied on but not sold. R. S. 60-3421 relates to levy of several executions on separate parcels. R. S. 60-3422 relates to execution of deed. Then comes R. S. 60-3423, quoted above, relating to payment of surplus after "sale made as aforesaid," that is, by the sheriff pursuant to taking, levy, or seizure.

There is no taking of or levy on or seizure of land in a mortgage-foreclosure suit. The sale is a judicial sale, made by the court, by one who acts substantially as agent of the court, and not under naked statutory power. Proceeds of a mortgage-foreclosure sale are not in the hands of the sheriff as such officer. Surplus is not in his hands, subject to demand by and payable on demand to the defendant in execution. Proceeds are in the hands of the court. Surplus is distributable only by the court, and the statute under consideration is no bar to distribution of surplus to a judgment lien holder in the situation Mrs. Thomas occupied. Observations in the opinion in *Pool v. Gates,* 119 Kan. 621, 624, 240 Pac. 580, based merely on the name "special execution," are not apposite.

This is no new subject in this court. (*Norton v. Reardon,* 67 Kan. 302, 72 Pac. 861; *Carter v. Hyatt,* 76 Kan. 304, 307, 309, 91 Pac. 61; *Wilden v. Duckworth,* 83 Kan. 698, 702, 112 Pac. 606; *Brewer v. Warner,* 105 Kan. 168, 170, 182 Pac. 411; *Moore v. McPherson,* 106 Kan. 268, syl. ¶ 5, 187 Pac. 884; *Bank v. Barons,* 109 Kan. 493, 495, 200 Pac. 297.)

In the case of *Norton v. Reardon* it was necessary for the court to determine just what kind of sale a foreclosure sale is. To do so the court quoted what is now R. S. 60-3401, defining executions as process; R. S. 60-3402, classifying executions into four kinds; R. S. 60-3406, specifying the command to the officer in executions against property; R. S. 60-3408, prescribing the duty of the sheriff under an execution against property; and R. S. 60-3416, requiring notice of sale of land taken on execution. These sections characterize the nature of the process under which sale of lands is made "as aforesaid." Other sections of the statute were considered, authorities were examined and quoted, and it is sufficient for present purposes to quote the following from the opinion of the court:

"Those sections of the statute which provide for a levy of an execution on real estate of the judgment debtor before its sale by the officer can have no application to judicial sales ordered by the court." (p. 306.)

For some purposes an order of sale may perform the function of a general execution. Thus, all that is necessary to keep a judgment alive is for the creditor to affirm vitality of the judgment by having process issued; levy and sale are not necessary. On this ground a majority of the court, including the writer, agreed that issuance of an order of sale would prevent a judgment from becoming dormant. (*Watson v. Iron-works Co.*, 70 Kan. 61, syl. ¶ 2, opinion p. 66, 78 Pac. 156.) In all cases the reason for and the operation of the statute must be considered. Such considerations demonstrate the soundness of the decision in *Norton v. Reardon*. Within eighteen years next succeeding rendition of the decision in *Norton v. Reardon* it was approved five times, and the decision has now stood for twenty-eight years, unmodified by statute or judicial decision.

The opinion in the Pool case quoted a part of R. S. 60-3107, as follows:

"In actions to enforce a mortgage, . . . no real estate shall be sold for the payment of any money . . . except in pursuance of a judgment of a court of competent jurisdiction ordering such sale." (*Pool v. Gates,* 119 Kan. 621, 625, 240 Pac. 580.)

The entire section reads as follows:

"In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgments shall be rendered for the amount or amounts due, as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for the sale of the property charged and the application of the proceeds, or such application may be reserved for the further order of the court; and the court shall tax the costs and expenses which may accrue in the action, apportion the same among the parties according to their respective interests, to be collected on the order of sale or sales issued thereon. When the same mortgage embraces separate tracts of land situated in two or more counties, the sheriff of each county shall make sale of the lands situated in the county of which he is sheriff. No real estate shall be sold for the payment of any money, or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale." (R. S. 60-3107.)

This section had no relation whatever to the controversy, and the quotation in the Pool opinion does not correctly represent it. The concluding sentence is complete in itself, and relates solely to

method of enforcing security for payment of money or performance of contract. Its sole purpose was to preclude any form of appropriation of land pledged or assigned in any way as security, to payment of the money or performance of the contract so secured, except appropriation by judicial sale. An illustration of application of the provision is found in the case of *LeComte v. Pennock,* 61 Kan. 330, 336, 59 Pac. 641.

In the case of *Kueker v. Murphy,* 86 Kan. 332, 120 Pac. 362 (1912), the court, speaking through the present chief justice, said:

"The purpose of the redemption law is to prevent the sacrifice of the debtor's land, make it discharge his debt to the extent of its value, and to give other creditors a chance to bid its full value so as to secure something on their claims." (p. 334.)

In the case of *Sigler v. Phares,* 105 Kan. 116, 181 Pac. 628, the court said:

"In order fully to protect himself against the loss of the fruits of his lien he was required to make a bid at the sheriff's sale (or see that one was made) larger than the amount of the first-mortgage debt, . . ." (p. 120.)

In the opinion in the case of *Moore v. McPherson,* 106 Kan. 268, 187 Pac. 884, the court said:

"The only way the bank could protect itself was by seeing to it that the property sold for some figure approximating what it was worth, or for enough to satisfy its second lien." (p. 273.)

If Mrs. Thomas had exercised her privilege, and had bid at the sale an amount above the superior lien for which she was willing to hold the land, she would have received the amount of her bid, with interest and costs, in case of redemption. If there were no redemption, she would have received a sheriff's deed.

In the brief for Mrs. Thomas it is said:

"Neither the decree nor the statute made it necessary for Thomas to bid at the foreclosure sale as her last recourse in order to preserve her rights against the property."

Of course, neither the decree in the Land Bank cases nor the statute prescribed what Mrs. Thomas should do. She was privileged to do nothing. But she was also privileged to bid at the sale, and so protect her lien, if the land were worth more than the superior lien. If she did nothing, her lien was discharged by the sale.

In support of her contention, Mrs. Thomas cites the cases of *Shrigley v. Black,* 66 Kan. 213, 71 Pac. 301, and *State Bank v. Marty,* 121 Kan. 753, 250 Pac. 321.

In the case of *Shrigley v. Black* there was a mortgage on land owned by life tenants and remainderman. Taxes became delinquent, a tax deed was issued, and the tax-deed holder brought ejectment against the life tenants and remainderman. The mortgagee was not made a party. The tax deed was set aside, the tax-deed holder was given a lien for taxes, and the land was sold to satisfy the lien. The remainderman purchased the interests of the life tenants. Afterwards, and a few days before expiration of eighteen months from date of sale, the then owner in fee redeemed. Meanwhile the mortgagee had commenced an action to foreclose, and the owner in fee claimed the mortgage was cut off by redemption. While the opinion discussed the redemption law, all that was said on the subject was unadulterated dictum, and the case was fully disposed of by the first paragraph of the syllabus:

"A mortgagor of real estate, being under duty to his mortgagee to pay taxes on the mortgaged property, cannot defeat the mortgage by any form of a lien growing out of taxes which he has suffered to become delinquent; nor will his grantee be permitted to accomplish a like result by means of delinquent taxes, or a lien for the same, existing at the time the property was conveyed to him." (*Shrigley v. Black*, 66 Kan. 213, syl. ¶ 1, 71 Pac. 301.)

The case of *State Bank v. Marty* has no application to the present controversy. In the latter case the landowner made a mortgage of land, his only mortgageable interest in which consisted of right to redeem from a foreclosure sale. Then he redeemed, and tried to defeat the mortgage. In the opinion the cases of *Case v. Lanyon, Gille v. Enright, Sigler v. Phares, Moore v. McPherson* and *Johnston v. Wear* were distinguished. Right of redemption is a mortgageable interest. It was distinctly held right of redemption was mortgaged, and the owner was privileged to mortgage his right of redemption by virtue of R. S. 60-3455, providing for assignment or transfer of right of redemption; consequently it was held redemption inured to benefit of the mortgagee.

It is not necessary to review other decisions of this court.

In the foregoing it has been said that inferior liens are cut off by foreclosure sale. The statement was made, of course, with respect to right to sell again. If Mrs. Thomas had become purchaser at the sale, or if she had been permitted to redeem from the sale which was made, her interest would have been perserved and protected. As it was, her lien was discharged when the landowner redeemed within the twelve months' period from the sale made under the superior lien.

Mrs. Thomas contends her lien could be cut off by deed only. This is simply to deny that an act of the legislature has any force. A multitude of cases from other states are cited. Neither R. S. 60-3460 nor anything equivalent to it is contained in the redemption law of any state whose decisions are cited, and the great bulk of the brief is devoted to discussion of matter rendered obsolete in this state by the statute.

Mrs. Thomas speaks of vested rights under her judgment. The redemption statute was enacted in 1893. Her judgment was obtained in 1928, and her rights were such as accrued to her under the law as it stood when her judgment was obtained. The law gave her a lien. She was bound to know her lien was an inferior lien, subject to discharge by a sale under the superior lien, and she was required to be diligent in watching the proceedings to enforce the superior lien if she desired to protect her own. She had the right to issue execution on her own judgment. The foreclosure sale was made after public notice, which she was obliged to anticipate would be given. She had the right to bid at the sale, and so protect her lien. She had the right to participate in distribution of surplus on application if the land sold for more than the first lien. She had the right to redeem, subject to the landowner's preëmptive right. These were her "vested rights." She took no step to protect her interest, and she was forbidden by a statute thirty-eight years old, enforced in repeated decisions of this court, and the policy of which is and always has been well understood, to sell the land again.

The judgment of the district court is affirmed.

HARVEY, J. (dissenting): The fact disclosed by the record and necessary to present the questions to be determined by this court, bared of complicating details, may be stated as follows:

On September 3, 1928, Katie E. Thomas, in an action in the district court of Morton county, secured a personal judgment for $8,455 against M. C. Combs and his wife on a promissory note. On the same day and in the same court the Federal Land Bank (in actions in which Katie E. Thomas was not a party) secured personal judgments against M. C. Combs and wife amounting to $8,389.45, and decrees foreclosing mortgages given by M. C. Combs and wife to secure the payment of the notes, on about 1,400 acres of land in Morton county. In the decrees the court found the sum due to be first liens upon the real property described, and decreed that the

real property be sold in accordance with law and subject to the right of redemption for the payment of the sums found due. Orders of sale conforming to the judgments and decrees were issued, and at the sheriff's sale, held November 3, 1928, the real property was bid in by the plaintiff, the Federal Land Bank, for the amounts of its judgments. There were no other bids. The sales were confirmed, and the period of redemption was fixed at eighteen months from the date of sale. On April 6, 1929, M. C. Combs and wife, who had remained in possession of the land above mentioned, conveyed the same to Archie E. McFall, who went into possession and within twelve months from the date of the sheriff's sale (November 3, 1928) redeemed the property from such sale. On May 5, 1930, Katie E. Thomas caused an execution to be issued on her judgment against M. C. Combs and wife, and a levy to be made upon the about 1,400 acres of land above mentioned, and the sheriff advertised the land for sale under the execution. Archie E. McFall then brought this action to enjoin that sale.

Plaintiff in his petition appropriately alleged the above facts much more in detail than is here stated, together with some details no longer important. These facts were admitted by the answer of the defendants. The pleadings of both parties contained allegations which properly may be regarded as conclusions of law, being statements of their respective rights under the law as they construed them to be. Plaintiff alleged, in substance, that Katie E. Thomas' judgment above mentioned was a lien upon the real estate in controversy from the date it was rendered (which was the first day of a regular term of court); that under such lien she had the right to redeem within fifteen months from the date of the sale by the sheriff, but that the right of the defendant owner to redeem was exclusive for the first twelve months, and that Katie E. Thomas, having failed to bid at the sale by the sheriff, and the real property having been redeemed from the sale by the defendant owner within twelve months of the date of the sale, Katie E. Thomas lost her judgment lien upon the real estate and the same became null and void and of no further force or effect, so far as that particular real estate is concerned.

The defendants in their answer denied that there was a completed foreclosure sale of the lands in question, and alleged that the sale was annulled by redemption therefrom within twelve months from the date of such sale; alleged that Katie E. Thomas

was not made a party and that she did not appear in the foreclosure action; alleged that she was still the owner of the judgment above mentioned, and alleged that the lien of her judgment against the real property in controversy was never divested by decree of court, or by the execution of a sheriff's deed, nor barred by any statute, and that as a result thereof her lien is prior and superior to the right, title, or interest of the plaintiff.

When the case came on to be heard it was stipulated that all the files, court records and proceedings of the former cases be received in evidence, also the deed by which plaintiff acquired title from M. C. Combs and wife; that under such deed plaintiff took immediate possession of the land, and has since continued in possession, and that Katie E. Thomas is still the owner of the judgment above mentioned, and that the same is unreversed and has not been vacated, or modified, or set aside, or satisfied, in whole or in part. Plaintiff's motion for judgment on the pleadings and the stipulation was sustained, and a permanent injunction granted. Defendants have appealed.

We turn now to a discussion of the questions which have been argued or suggested. It is conceded by the pleadings and the argument of counsel that Katie E. Thomas' judgment against M. C. Combs and wife was by virtue of the statute (R. S. 60-3126) a lien from the day it was rendered (that being the first day of the regular term of court) on all their real estate in the county, which included the about 1,400 acres in controversy; and it was stipulated that the judgment is unreversed on appeal, and has not been vacated, or modified, or set aside, or satisfied, in whole or in part.

Katie E. Thomas was not a party to the action brought by the Federal Land Bank to foreclose the mortgage against M. C. Combs and others above mentioned. It is the general rule, well recognized in this court and elsewhere, that one not a party to an action, or in privity with a party to the action, is not bound by the judgment in the action, can take no advantage of such judgment, and is not bound to take notice of any of the proceedings of the court in relation thereto.

In 33 C. J. 1106 it is said:

"Due process of law requires notice and an opportunity to be heard before being concluded by a judgment. No valid judgment can be rendered for or against one who was not a party to the action; . . . Only parties and privies are bound by a judgment."

See, also, 15 R. C. L. 1005.

In *A. T. & S. F. R. Co. v. Comm'rs of Jefferson Co.*, 12 Kan. 127, it was held: ·

"A decree enjoining county commissioners from issuing certain bonds, made in an action to which the persons claiming a right to them are not parties, is no bar to an action by such parties to compel the issue of those bonds."

See, also, *Township of Dixon v. Comm'rs of Sumner Co.*, 25 Kan. 519.

In *Ervin v. Morris*, 26 Kan. 664, it was held:

"A decree binds the parties and those who are privies in estate, but does not conclude third parties or any who are strangers to the record and deriving no title from any party thereto."

In *J. C. & Ft. K. Rly. Co. v. Silver*, 27 Kan. 741, it was held:

"Where a judgment, purporting to be a judgment for the condemnation of the right of way for a railway company, is rendered against the railway company, and it does not appear that the condemnation proceedings were instituted by the railway company, or that the railway company was a party to them, or even that it had any notice of them, and no summons has been served upon the railway company, *held*, that such judgment is rendered without jurisdiction in the court to render the same, and is consequently void."

In *Butler v. Craig*, 29 Kan. 205, there was a judgment foreclosing a real-estate mortgage. Thereafter the defendant owner sold the land subject to the lien of the judgment. The real property was later sold to satisfy the judgment and a surplus remained in the hands of the officer. The court made an order that if the grantee in the deed did not intervene and claim the surplus within thirty days it should be paid to the grantor. It was held that the order was void as to the grantee. It was argued that the grantee was not in court asserting any claim to the surplus. In answer to that the court said:

"This is true, and therefore he is not bound by the order of the court requiring him to interplead with Noble for such fund. A judgment or order without notice is void. *Mastin v. Gray*, 19 Kan. 458, 461 *et seq.*, and cases there cited. One, not a party or privy, is not bound to take notice of proceedings in court; nor does he lose any right; nor is he bound to attend to his interest in the surplus money, arising at a sale of which he is not presumed to have notice, so as to protect himself. . . . Jurisdiction of the person is essential to the validity of a judgment or order affecting a party personally." (p. 207.)

In *Richards v. Thompson*, 43 Kan. 209, 23 Pac. 106, the holder of a mortgage after the death of the mortgagor foreclosed his mort-

gage, making no one a defendant except the mortgagor. He obtained service by publication, procuring a decree, and a sheriff's deed, which was recorded. It was held that all the foreclosure proceedings, including the sheriff's deed, were void as against the heir of the mortgagor and the grantee of such heir, who were not parties to the foreclosure action. In *Murphy v. Hindman*, 58 Kan. 184, 48 Pac. 850, it was held:

"As a general rule strangers to a judgment are not bound by it, and, ordinarily, one who is not bound by a judgment cannot avail himself of it in another proceeding."

In *Manley v. Debentures Co.*, 64 Kan. 573, 68 Pac. 31, it was held:

"One not made a party to an action is not bound by the judgment rendered therein, nor can he claim advantages growing out thereof."

The case of *Holderman v. Hood*, 70 Kan. 267, 78 Pac. 838, was an equity suit by a beneficiary under an express trust against the trustee to enjoin the sale of lands. The petition alleged it was filed on behalf of complainant and all other creditors likewise situated who desired to avail themselves thereof. It was held that a final decree in the suit did not affect the rights of a beneficiary in the trust, although in like situation as complainant, who was without notice or knowledge of its pendency. In *Peck v. Ayres*, 79 Kan. 457, 100 Pac. 283, it was held:

"In a suit to quiet the title to lands a prior judgment quieting the title thereto constitutes no estoppel and is not evidence against a party whose claim of title antedates the commencement of the prior suit, who was then a minor, had no notice of the pendency of the suit, was not a party thereto, and was not represented by guardian or otherwise therein."

In *Hetzer v. Burbery*, 88 Kan. 805, 129 Pac. 1127, on the trial of an action in ejectment it was admitted that a decree in a suit to quiet title to the same land had been regularly rendered in favor of plaintiff, quieting his title to the land in controversy against all parties then claiming an interest therein. It was held this was insufficient to bar the grantee in a tax deed issued upon the land nine months after the decree was rendered. In the opinion it was said:

"To bar the holder for the time being, of an outstanding tax-sale certificate, it should appear that such a holder was a party to the suit." (p. 808.)

In *King v. Wilson*, 95 Kan. 390, 148 Pac. 752, it was held:

"A judgment, purporting to be on a claim for improvements, against the owner of a homestead, is not binding on the husband or wife of such owner,

so far as the homestead exemption is concerned, where such husband or wife was not a party to the action in which the judgment was rendered."

In *Chapek v. Jurgensen*, 99 Kan. 658, 162 Pac. 1165, it was held:

"The holder of a mortgage on real property, having neither title nor right of possession, and who is not a party to an action brought against the mortgagor to recover possession of the land, is not bound by a judgment rendered therein against the mortgagor." (Citing *Loan Co. v. Marks*, 59 Kan. 230, 52 Pac. 449.)

In the opinion it was said:

"To hold otherwise would be to deny their right to a day in court." (p. 659.)

In *Vandling v. Griffith*, 105 Kan. 477, 185 Pac. 23, in which a question arose as to whether the parties to the action were bound by the judgment in a former case, it was said:

"Neither Vandling nor Griffith was a party to the other suit, and of course neither one was benefited or harmed by the judgment." (p. 481.)

In *Illinois Life Ins. Co. v. Young*, 118 Kan. 308, 235 Pac. 104, a suit on a series of notes against the maker and indorser, a defense was interposed that the indorser, in an action in California by another holder, had defeated a recovery, and in another action had obtained judgment awarding him possession; it was held that the essentials of *res judicata* were wanting, and the judgments in the California litigation were not a bar to a recovery against the indorser and in favor of the litigant who was not a party to the California litigation and who did not claim under any person bound by the California judgment.

In *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339, a senior mortgagee sued to foreclose his mortgage without making a junior mortgagee a party defendant. The foreclosure action proceeded to sheriff's sale and deed. It was held that the junior mortgagee's rights were not affected by the proceedings.

In the opinion of the court herein the case last cited is discussed and criticized, and it is said: "The soundness of the decision . . . is not a matter of present concern." But on the point just discussed, at least, it is clear that the decision is in harmony with the long line of decisions of this court and in harmony with the general rule that one not a party to an action or in privity with such a party is not bound by the judgment or decree and is under no duty to give attention to the proceedings of the court therein.

The opinion herein cites *Williams et al. v. Tatnall et al.*, 29 Ill. App. 553, and *Montague v. Marunda*, 71 Neb. 805, 99 N. W. 653, on

the power of a court of equity to consider the claims of new parties as to the disposition of a surplus at a judicial sale. In this case there was no surplus, and no one not originally a party to the action asked, or was ordered, to be made a party for any purpose. But, passing that thought for the present, there is no necessity of going to other jurisdictions for the power or duty of the court with respect to new parties, when they are necessary. Our own statute deals with the question, and our own decisions treat it. The statute (R. S. 60-416) reads:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties the court or judge must order them to be brought in."

Commenting on this and allied sections, in *Gerson v. Hanson,* 34 Kan. 590, 9 Pac. 230, the court said:

"The rule thus embodied in these provisions of the code is called equitable, and is derived from equity practice, because it is more frequently appealed to in proceedings formerly called equitable." (p. 592.)

In *Swenney v. Hill,* 65 Kan. 826, 70 Pac. 868, a case in which promissory notes were given to one party and a mortgage securing them to another who, by the terms of the mortgage, was given active powers and authority over the subjects of the mortgage relation, it was held that the mortgagee was a necessary party to a suit brought by the payee of the notes to foreclose the mortgage. After quoting the above section and another the court said:

"But these sections of the statute simply embody the doctrines of chancery courts in reference to the making of parties to suits." (Citing *Gerson v. Hanson,* supra.) (p. 830.)

In *Larimore v. Miller,* 78 Kan. 459, 96 Pac. 852, after quoting the pertinent portions of the above section, it was said:

"And it is held that under this provision it is the duty of the court, of its own motion, and notwithstanding the action of the parties, to require the bringing in of any persons whose right will be prejudiced by a judgment, and that where this is not done a reversal may be had at the instance of a party." (p. 461.)

In *Benton v. Benton,* 84 Kan. 691, 115 Pac. 535, an action for the construction of a will, in which a question arose as to who necessary parties were before the court, it was said:

"Section 40 of the civil code (R. S. 60-416) provides that the court must bring in other parties when necessary to a determination of the controversy, and this should be done." (p. 695.)

In *Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54, it was held:

"In a foreclosure suit, where parties defendant are lawfully litigating their rights, which are subordinate to those of the plaintiff mortgagee, and the proper determination of those subordinate rights necessitates the presence of additional parties, the trial court or judge should order such other parties to be brought in, and the rights or pretensions of such additional parties in the property in question may be properly adjudicated in the same action." (Syl. ¶ 7.)

Under the statute and authorities last cited, before the court in the foreclosure case under consideration made any order or decree affecting the rights of Katie E. Thomas, who was not a party to the action, the court should have made an order making her a party, and should have considered any claim she presented. This was not done. Indeed, no order or decree of the court in the foreclosure case mentioned her or any claim she had. The Illinois and Nebraska cases above mentioned do not go so far as to hold that an order or decree affecting one not a party to the action has any binding effect, and our own court has held that an order of the court with respect to a surplus which affects one not a party to the action is void as to him. (*Butler v. Craig,* 29 Kan. 205.)

It is pointed out that Katie E. Thomas had no lien by virtue of her judgment, or otherwise, on the real property in controversy at the time the foreclosure actions under consideration were brought, and it is argued that it was then neither necessary nor proper to make her a party defendant. That is true. This, however, would not prevent the necessity of making her a party later, as the statute and decisions above referred to provide, if orders or judgments affecting her interest were to be made in the action. The situation, however, does suggest the question of whether the doctrine of *lis pendens* applies. The pertinent portion of our statute (R. S. 60-2601) reads:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title; . . ."

Katie E. Thomas is claiming nothing as against the plaintiff, the Federal Land Bank, in those actions. The plaintiff's claim was paid in full and it no longer has any interest in the subject matter of the action. Indeed, it is not argued by counsel in this case that the rights of Katie E. Thomas are in any way diminished or affected by the doctrine of *lis pendens,* and, as I view the matter, they are not.

In this state a mortgage on real property is a mere security creating a lien upon the property, but vesting no title and giving no right of possession, either before or after breach, and does not limit the mortgagor's right to control the property, except that the security shall not be impaired. Title, subject to the lien of the mortgage, remains in the mortgagor, and he may convey it, or otherwise encumber it, subject to the lien of the mortgage. (*Chick et al. v. Willetts,* 2 Kan. 384.) The statute (R. S. 60-3107) confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises. (*Waterson v. Devoe,* 18 Kan. 223.) Our decisions have been uniform on this point. Among them are *Robbins v. Sackett,* 23 Kan. 301; *Lewis v. Kirk,* 28 Kan. 497; *LeComte v. Pennock,* 61 Kan. 330, 336, 59 Pac. 641; *Stark v. Morgan,* 73 Kan. 453, 85 Pac. 567; *State v. Rhodes,* 77 Kan. 202, 93 Pac. 610. A judgment for the balance due on the debt secured by the mortgage, and a decree foreclosing the mortgage, have the effect of converting the mortgage lien into the lien of the judgment and decree (*Dumont v. Taylor,* 67 Kan. 727, 74 Pac. 234); but that is still a lien only upon the property, and is not a transfer of title.

"Of course the mortgage, as well as the judgment decreeing a foreclosure, was only a lien upon the land, and did not confer title." (*Beckman v. Sikes,* 35 Kan. 120, 122, 10 Pac. 592.)

When the real property is sold by the sheriff under an order of sale based on the judgment and decree of foreclosure, that is not a completed sale and of itself conveys no title. In *Mills v. Ralston,* 10 Kan. 206, it was said in the opinion:

"A sale in chancery is not complete till the sale is confirmed. In ordinary sales by auction, or by private agreement, the contract is complete when the agreement is signed; but a different rule prevails in sales before a master. In such cases 'the purchaser is not considered as entitled to the benefit of his contract till the master's report of the purchaser's bidding is absolutely confirmed.'" (p. 212.)

And in *Johnson v. Lindsay,* 27 Kan. 514, it was held:

"A sale of real estate, made by a sheriff under an execution or order of sale, is not consummated so as to entitle the purchaser to a conveyance thereof, and to vest in him a title thereto, until the court has judicially acted upon it."

In the opinion it was said:

"While the confirmation of a sale relates back to the date of the sale, the proceedings under an execution or order of sale are *in fieri,* and not perfected

until the court has examined the proceedings, and directed the clerk to make an entry on the journal that the court is satisfied with the legality of the sale, and for the officer to make to the purchaser a deed for the lands and tenements so sold." (p. 516.)

Where, after confirmation, the purchaser is entitled to a deed he acquires the full equitable title although the deed is not executed and delivered to him. (*Bell v. Diesem*, 86 Kan. 364, 121 Pac. 335.) The sheriff's deed may be issued several years later, but when issued it relates back to the judgment on which the deed rests, and further, if necessary. (*Knox v. Doty*, 81 Kan. 138, 105 Pac. 437.)

These decisions last cited were made under statutes which did not provide for the payment of the debt by the mortgagor after sale by the sheriff and confirmation thereof by the court. It is the sheriff's deed, made in conformity with the order of the court confirming the sale made by the sheriff, which passes title to the property. (*Smith v. Hague*, 25 Kan. 246.)

In *Clark v. Nichols*, 79 Kan. 612, 100 Pac. 626, a foreclosure proceedings under the redemption law, it was said:

"The sale and redemption are in a sense parts of the foreclosure proceeding. . . ." (p. 615.)

In *Bowers v. Jett*, 91 Kan. 364, 366, 139 Pac. 383, it was said:

". . . the property was sold under the foreclosure decree, and the form of the first-mortgage lien was thereby changed from a judgment to a certificate of purchase, but it was essentially the same demand and was still a first charge."

The certificate of purchase serves a purpose of its own. Its function ceases when the deed is made. (*Armstead v. Jones*, 71 Kan. 142, 80 Pac. 56.)

In *Chambers v. Rose*, 111 Kan. 22, 206 Pac. 336, involving the foreclosure of a mortgage after the redemption law took effect, it was held:

"On the confirmation of a sale of real estate under an order of sale in a foreclosure action only the equitable title to the real estate passes to the purchaser on confirmation; the legal title will not pass until the sheriff's deed is executed."

The statute (R. S. 60-3439) specifically provides that the right of possession shall remain in the defendant owner during the statutory period of redemption, although his title and right of possession during that time is not subject to sale on execution. (R. S. 60-3455. See *Smith v. Shaver*, 112 Kan. 790, 212 Pac. 666.) While the judg-

ment and decree of foreclosure determine the amount due on the debt secured by the mortgage and the extent of the lien upon the specific real property, and the order of confirmation determines the regularity of the sale and who shall be entitled to a sheriff's deed, and when such deed shall issue, the right to the deed is conditional upon redemption, and the court still retains jurisdiction to determine any questions which may arise concerning redemption, the actual issuance of the deed, and the placing of the grantee in possession, should a deed be issued. Since the deed is the instrument which passes title, and the court has jurisdiction of the cause until after title has passed, there is no complete sale of the property until the deed is in fact issued. In this case there was a redemption by the grantee of the mortgagor within the time provided by law for such redemption. The result of that was to satisfy the judgment and decree of foreclosure, to render nugatory the sale by the sheriff, and to put a stop to the judicial sale then in progress. It left the title to the real property in the mortgagor (in this case the grantee of the mortgagor), where it had always been since the mortgage was given.

It is said in the opinion herein that Mrs. Thomas should have bid at the sale by the sheriff. No statute is cited requiring one in her situation to bid; indeed, I understand it is conceded there is no such statute. She was not a party to the action, nor was she a necessary party so far as the jurisdiction of the court to foreclose the mortgage in question was concerned. (*Stacey v. Tucker,* 123 Kan. 137, 139, 140, 254 Pac. 339, and cases·there cited.) If she had bid at the sale she would have bid as any other stranger to the action. It is true she might have then made application to the court to be made a party. Such application would have been addressed to the sound discretion of the court. In *Gibson v. Ferrell,* 77 Kan. 454, 94 Pac. 783, it was held:

"A district court, acting upon principles of manifest justice, may, in cases not provided for by the code of civil procedure, permit one not a party to the suit to intervene, either before or after judgment, for the protection or advancement of some right with reference to the subject matter of the litigation which he holds. In such a case the application for leave to intervene must show that the applicant has been diligent in seeking the aid of the court. Such an application is addressed to the sound discretion of the court, and an order denying leave to intervene will not be set aside unless it clearly appears that the discretion permitted in the matter has been abused."

See, also, *Trust Co. v. Zinc Co.,* 86 Kan. 860, 122 Pac. 875.

Had the trial court deemed her not a necessary party for the determination of the controversy between the plaintiff and the defendant in the foreclosure action, and denied her petition to intervene, it was not at all certain that this court would have held that the trial court abused its discretion. That would have resulted in Mrs. Thomas having to pay the full amount of her bid into court. In that event the surplus, after paying the costs and taxes (R. S. 79-419) and the sum due the plaintiff in the action, would have been paid to the defendant in execution, M. C. Combs (R. S. 60-3423); and the sheriff could have been amerced if he had not done so. (R. S. 60-3429.) These statutes may be applicable to judicial sales. In *Pool v. Gates,* 119 Kan. 621, 240 Pac. 580, it was held:

"In the confirmation of a judicial sale in foreclosure of a mortgage on real property, the surplus proceeds of the sale, after paying taxes upon the real property, the costs of the foreclosure proceeding and the judgment in the foreclosure decree, should be paid to the defendant in execution."

This decision was concurred in by all the members of the court except one, who dissented in part, being noted as follows: "I concur in the syllabus, but not in judgment of reversal." (p. 626.) If, on the consideration of that case, he argued that the result was unconscionable for the reasons stated in the opinion herein, I have no recollection of it. If the contention was made, no other member of the court concurred in it; he alone entertained that view. To have permitted Gates to be reimbursed out of the surplus in question would have had the effect of permitting him to force payment on prior mortgages without an action to foreclose them, contrary to the statute (R. S. 60-3107) and numerous decisions of this court. A similar contention was denied in *Jenkins v. Green,* 22 Kan. 562, more than half a century ago. Gates had his prior mortgage and interest coupons on others. The courts were open to him to foreclose them. He was denied no right he was entitled to under the law. But, passing that, the principal criticism now made in the opinion of the court herein of the decision in the case of *Pool v. Gates,* supra, does not go to the application of the law in that case, but rather to the rule of law announced in the syllabus of the court. This was concurred in by all of the members of the court, and has never been questioned until the opinion of the court herein. At the time of the judicial sale in question in this case it stood as the decision of this court interpreting the statute upon that question. Mrs. Thomas and her counsel

were justified in relying on it as being the law of this state. (15 C. J. 947, and case there cited.) But there is nothing wrong with the rule of law stated in the syllabus as applied to the record in that case, or if applied to the record in this case. There are, of course, inherent differences between a general judgment and a specific one, between a general execution and execution in special cases, such as an order of sale and foreclosure, just as there are inherent differences in rights or causes of action, and such differences will be considered by the courts when the necessity therefor arises. (*Rich v. Roberts,* 103 Kan. 116, 117, 172 Pac. 996.) But our code of civil procedure is designed to provide rules for the procedure in all classes of civil actions and for all the varied questions or situations which may arise in them. · It specifically abolishes the distinctions between actions at law and suits in equity, and the forms of all such actions and suits previously existing. (R. S. 60-201.) It was early held in this state:

"The final determination of an action, whether it be by proceedings formerly known as equitable or at common law, is by our code a judgment." (*State v. M'Arthur,* 5 Kan. 280.)

Our statute (R. S. 60-3101) so provides, and other decisions are to the same effect.

Generally speaking, an execution is a remedy afforded by law for the enforcement of a judgment, or the writ used for that purpose. (23 C. J. 306 to 308, and cases cited; 10 R. C. L. 1217.) In *United States v. Nourse,* 34 U. S. 8, 28, it was said:

"An execution is the end of the law. It gives the successful party the fruits of his judgment, and the distress warrant is a most effective execution. It may act on the body and estate of the individual against whom it is directed."

"The act of carrying into effect the final judgment or decree of a court. The writ which directs and authorizes the officer to carry into effect such judgment." (Bouvier's Law Dictionary.)

In this state, as elsewhere, execution has been used to enforce the final judgment of court, whatever may be the form of that judgment. It has even been applied to the collection of the sum finally found due by an arbitrator in a workmen's compensation ·case. (*Palmer v. Fincke,* 122 Kan. 825, 253 Pac. 583.)

Our statute (R. S. 60-3401) provides that an execution shall be deemed process of the court and shall be issued by the clerk and directed to the sheriff of the county, and classifies them (R. S. 60-3402) into four kinds: (1) Against the property of the judgment

debtor, (2) against his person, (3) for the delivery of possession of real or personal property, with damages for withholding the same, and costs, and (4) executions in special cases. And in 60-3469 it is provided that in special cases the execution shall conform to the judgment or order of the court. Naturally this must be true as to all executions or classes thereof. They must conform to the judgment of the court by whatever name such judgment may be called. R. S. 60-3107 relates to actions to enforce a mortgage, deed of trust or other liens, and provides, among other things, that judgment shall be rendered for the sum due and for the sale of the property charged and the application of the proceeds; or such application may be reserved for the further order of the court. The judgment, in so far as it relates to the application of the proceeds, would be binding, of course, only upon parties to the actions, or their privies; if reserved in the judgment, and there was a later judgment for the application of the proceeds, such judgment would be binding only on the parties then before the court, or their privies.

With respect to this section (which has been amended in some details since the decision) it was said in *Blandin's Adm'r v. Wade*, 20 Kan. 251, which was an action for the foreclosure of a mortgage:

"Under our statute, in suits upon notes secured by real-estate mortgages, the mortgagees recover judgments for the amount of the debt, and that the premises shall be sold under a special *fieri facias*. Such special execution is similar to an order to sell real estate seized upon attachment to secure a claim, and the order of sale of real estate to satisfy a mechanic's lien. *Prior* to the sale, the law gives the right to redeem in all these cases. *After* the sale, there is no redemption in either case. *And in all these cases, the proceeds are first applied to the liens, judgments and costs, and the surplus goes to the judgment debtor.* (Sec. 399 of civil code, Gen. Stat. 705.)" (Last italics ours.) (p. 254.)

In *State v. M'Arthur*, 5 Kan. 280, an original mandamus action, the relator showed that in October, 1860, he recovered a judgment, and for the foreclosure of a mortgage, but the debt remained unpaid; and in December, 1868, he filed a præcipe for an order of sale—but the clerk refused to make it out because more than five years had elapsed since the rendition of the judgment—and asked for a writ directing the clerk to issue the order of sale. The court held that under the section of the code (now R. S. 60-3405) the judgment was dormant, and denied the writ. The relator argued that a judgment of foreclosure is not within the intent of this section, that it applied only to judgments at law, and pointed out inherent

differences between executions on the one hand and orders of sale on the other. The court declined to sustain that view.

In *Shultz v. Smith,* 17 Kan. 306, it was held:

"A sheriff cannot legally sell real estate on execution after the return day of the execution, and more than sixty days after its date and after it was issued. After such a sale has been made, the judgment debtor whose property was sold may have the sale set aside, on motion in the proper district court."

Our reports show that for more than forty years after our state was organized the final determination of a controversy in court was regarded as a judgment, and a carrying of the judgment into effect, or the writ for that purpose, was regarded as an execution. Repeatedly in the decisions orders of sale in foreclosure cases and attachment cases are referred to as executions, and the appropriate sections of the code applied to any question raised concerning them. There was no substantial departure from that until the decision of the case of *Norton v. Reardon,* 67 Kan. 302, 72 Pac. 861 (1903). That was an action to foreclose a mortgage. There was a judgment and decree of foreclosure, and an order of sale was issued under which the sheriff sold the property six days after the return day of the writ, as provided by statute (now R. S. 60-3426). The sale was confirmed. A few days thereafter a motion was filed to set the sale aside. This was overruled, and the appeal was from that ruling. The opinion cites or refers to a number of provisions of our code and then discusses (p. 307) the distinction between general executions at common law and the chancery practice with respect to judicial sales. It was said:

"By our statute certain restrictions have been imposed on chancery sales unknown to strict equity procedure. All executions, whether general or special, must be issued by the clerk and directed to the sheriff. (Gen. Stat. 1901, § 4891.) Sales thereunder must also be held at the courthouse in the county where the lands are situated. (Gen. Stat. 1901, § 4908.) Sheriff sales made under execution or order of sale must be confirmed by the court. (Gen. Stat. 1901, § 4952.)" (p. 308.)

It was held that when a decree of foreclosure has been entered the execution for the sale of the property is special and must conform to the order of the court; that the statute (now R. S. 60-3426) has no application to execution in special cases mentioned in the fourth division of our statute (now R. S. 60-3402), and that it being within the power of the court to order the property sold under a special execution at the time it was sold, the confirmation of the

sale rendered it valid, being an approval of that which, at the time of performance, the court had the power to order in the first instance. It was further held that this was within the principle announced in the second paragraph of the syllabus of *Thompson v. Burge,* 60 Kan. 549, 57 Pac. 110. The court appeared to overlook, or at least did not note the fact, that that case related to a sale in the probate court, the procedure for which is not included in the civil code. The reason given (p. 310) for not following *Shultz v. Smith,* 17 Kan. 306, was that in that case the court did not distinguish between ordinary execution sales and those specially ordered by the court. I give it as my judgment that in the *Shultz v. Smith* case the court was following the code of procedure, while in *Norton v. Reardon,* supra, the court was going back of that to the practices and procedure of the common law and courts of chancery. And this soon got the court into trouble. In *Watson v. Iron-Works Co.,* 70 Kan. 43, 74 Pac. 269, the question was whether the section of our code (now R. S. 60-3405) which shortly provides that a judgment shall become dormant in five years, and shall cease to operate as a lien on real property if an execution has not been issued, applies to a judgment and decree in a mortgage foreclosure case. Following the reasoning of *Norton v. Reardon,* supra, and the distinction between executions at common law and the practices in chancery, it was held the statute did not apply, and *State v. M'Arthur,* supra, was specifically overruled. There was a dissent (70 Kan. 50) by Burch, J., concurred in by Johnston, C. J., and Mason, J., in which it was said, among other things:

"The sole end and aim of an execution is to enforce the judgment of the court. Whatever the judgment may be, execution has no office but to carry it into effect. The only purpose of dormancy is to cut off belated efforts to enforce a judgment." (p. 54.)

It was pointed out (page 59) that the statute (now, as amended in some details, R. S. 60-3107), relating specifically to the final determination of the rights of parties to an action to foreclose a mortgage, does not use the word "decree," and provides for nothing except a judgment, and contemplates the judgment shall be enforced by process duly issued and executed by the sheriff, and it was said:

"Our ancient ancestors roamed about in the jungles of law and equity and actions and suits. Our nearer legal progenitors led the lawyers up into the sunshine and pure air of the plains of the codes. Through some atavic impulse, a majority of my most respected associates make a sally toward the old racial habitat."

Objection was made to overruling the case of *State v. M'Arthur*, supra, and after quoting from the opinion of the court it was said:

"This goes to the very foundation of our code practice, but it is overruled. Of necessity, the statute upon which it is expressly based impliedly follows, and section 10 of the code (Gen. Stat. 1901, § 4438) [now R. S. 60-201] abolishing the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, is impliedly repealed." (p. 60.)

There was much more to the same effect. The result was, a rehearing was granted, and on the rehearing (p. 61) the court retracted its former holding and followed *State v. M'Arthur*, supra.

The criticism of the decision in the case of *Pool v. Gates*, supra, made in the opinion of the court herein, is another "sally toward the old racial habitat."

Turning now to the statute (R. S. 60-3460), it reads:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for."

This is an anomalous provision said not to be found in the redemption statutes of any other state. For what is meant by "any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem," we must look to sections R. S. 60-3440 and 60-3441 of the statute. They read:

"For the first twelve months after such sale, the right of the defendant owner to redeem is exclusive; but if no redemption is made by the defendant owner at the end of that time any creditor of the defendant and owner whose demand is a lien upon such real estate may redeem the same at any time within fifteen months from the date of sale. A mechanic's lien, before decree enforcing the same, shall not be deemed such a lien as to entitle the holder to redeem." (R. S. 60-3440.)

"Any creditor whose claim becomes a lien prior to the expiration of the time allowed by law for the redemption of creditors may redeem. A mortgagee may redeem upon the terms hereinafter prescribed before or after the debt secured by the mortgage falls due." (R. S. 60-3441.)

With respect to these statutes the real question is: Shall they be construed literally in all cases? Or, shall they be construed in harmony with other applicable statutory provisions and with principles of law so fundamental that the legislature cannot be presumed to have intended to overthrow them? We must concede that our decisions on this point are not altogether harmonious. In some of

the first cases to reach this court after the redemption law was passed, particularly *Case v. Lanyon,* 62 Kan. 69, 61 Pac. 1130, and, in one view, *Gille v. Enright,* 73 Kan. 245, 84 Pac. 992, there was a tendency to construe the statute literally. In other cases, particularly *Shrigley v. Black,* 66 Kan. 213, 71 Pac. 301; *State Bank v. Marty,* 121 Kan. 753, 250 Pac. 321; and *Stacey v. Tucker,* 123 Kan. 137, 254 Pac. 339, the court declined to follow the literal language of those sections and construed them in harmony with other statutory provisions and with such fundamental principles of law above referred to. These are not the only cases in which the court has declined to follow literally the language of the redemption act. In *Davidson v. Cattle Co.,* 76 Kan. 462, 92 Pac. 705, it was conceded (p. 464) that the language of section 25 of the redemption act (now R. S. 60-3462) is sufficiently inclusive to sustain the claim of the appellant, but it was held other matters had to be considered, and the claim of the appellant was denied. And in *In re Estate of Wood,* 118 Kan. 548, 235 Pac. 864, referring to R. S. 60-3455, it was said:

"The language should be interpreted liberally to promote the general end sought, rather than strictly according to the bare letter." (p. 549.)

Let us examine these cases which interpreted the statute literally and those which have taken a broader view of it, and others citing these cases or applying the statute. We shall abbreviate the statements as much as possible.

In *Case v. Lanyon,* supra, a lumber company recovered judgment against a mining company and levied execution on and sold to Wells real estate belonging to the judgment debtor. The sale was confirmed and a certificate of purchase issued. Thereafter the mining company assigned its right of redemption and conveyed the real property by warranty deed to Steward, who, shortly before one year after the sale, redeemed from the sale, and later conveyed the land to the Lanyon company. Soon after the sale to Wells was confirmed, and before the mining company had conveyed to Steward, Case recovered a judgment against the mining company. After the real property had been conveyed to the Lanyon company Case caused an execution to issue on the judgment against the mining company and had the sheriff levy upon and sell the real property. The trial court refused to confirm the sale, and Case appealed. He argued (p. 71) that the payment by Steward was a discharge of the

lien and not a redemption of land. This contention was denied. On page 72 it was said:

"A. right to redeem from. a sale of real estate is purely statutory. . . . Courts of equity, in justifiable cases, may grant in their decrees of sale something akin to the right, but the power thus exercised is apart from the one conferred by the statute under consideration."

It was pointed out that the statute confers on certain interested classes of persons a right of redemption from the sale, provides the mode and time of exercising the right, and declares the effect to follow the sale and the allowance of the right, and it was said: "That effect, and it alone, may be allowed." The statute (R. S. 60-3460) was quoted, and it was said:

"This statute is not only positive, but it is plain down to the concluding clause. The land shall not again be sold for the satisfaction of inferior liens 'under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for.'" (p. 73.)

It was pointed out that within the twelve months after the sale Steward redeemed, and it was said:

"This exercise of the right of redemption by Steward prevented Case, . . . from exercising his like right as a subsequent lien holder." (p. 73.)

From this appellant argued that he did not have a right to redeem, and therefore the concluding clause of the statute did not apply to him. As to that it was said:

"In this, counsel are mistaken. What is meant by the right to redeem is the right in the contingency and under the conditions allowed by the act. The phrase 'right to redeem' is not synonymous with 'opportunity to redeem.' The plaintiff in error had the right to redeem contingent upon the failure of a preferred class of persons to redeem. The exercise of that preferred right defeated the right of plaintiff in error, but it did not destroy his contingent right as allowed by law." (p. 73.)

It was then pointed out that in the event the judgment creditor or mortgagee secured his lien within the last three months of the eighteen months' redemption period, and before the expiration of the final limit the defendant owner redeemed, the judgment creditor or mortgagee could have the property sold. It must be conceded that the decision as a whole was a literal interpretation and application of the statute. But this decision got the court into trouble when the next case arose requiring a construction of the statute.

In *Shrigley v. Black*, 66 Kan. 213, 71 Pac. 301, there was a will, a life tenant, remaindermen, and a controversy between them as to which was under the duty to pay taxes on real property, which was

mortgaged. We pass these questions and state only those pertaining to the redemption statute. The real property was sold for taxes, a tax deed issued, and the holder brought ejectment, not making the mortgagee a party. His tax deed was held void as a conveyance of title, but he was adjudged to have a first lien upon the property for the taxes and interest represented by the tax deed. An order of sale was issued, the land sold, the sale confirmed, and the period of redemption fixed at eighteen months. Shortly before this time expired the defendant owners redeemed. The mortgagee had filed suit to foreclose his mortgage before the ejectment action was brought, which suit was pending all the time the ejectment action, including the sale of the real property and redemption, was in progress. After the redemption the defendant owners filed supplemental answers in the foreclosure suit, setting up the judgment of the first lien for taxes, the foreclosure of that lien, the sale of the property, and their redemption of it. They contended that the tax lien was one prior to the mortgage then being foreclosed; that the mortgagee had not redeemed, although he had the full three months in· which he might have done that, and that because of the statute (now R. S. 60-3460) the land could not again be sold for the inferior lien of the mortgage. The opinion (p. 217) starts out by stating that the first question presented to the court for consideration relates to the effect of the redemption in view of the statute (now R. S. 60-3460), which is quoted, and the court said:

"It is contended that the mortgage lien of Shrigley was inferior to the lien decreed for taxes, and that Shrigley, as the holder of the inferior lien, had a right to redeem within fifteen months; hence, his lien is wholly cut off by the redemption made by the minors. A literal construction of the terms of this section leads to this conclusion."

The court, however, held to the contrary. It was the duty of the defendant owners to pay the taxes. Whether they paid them before the sale and confirmation of the decree, or afterwards, was not material. This is a conclusion directly opposite to that reached by the court in *Case v. Lanyon,* supra, for there a similar argument had been made, which the court declined to follow.

The dissenting opinion by Doster, C. J. (who had written the opinion of the court in *Case v. Lanyon,* supra), which was concurred in by Smith, J., makes it clear that he regarded the opinion as involving the question of redemption, and that the decision of the court on that point was contrary to that in *Case v. Lanyon,* supra. It begins (p. 220):

"It is admitted by my associates that section 23 of the redemption law (Gen. Stat. 1901, § 4949 [now R. S. 60-3460]), if given effect, is in express terms applicable to this case and determinative of it."

The dissenting opinion discusses the other point in the case at length, but on page 228, after pointing out that the lien given for the taxes was paramount to the mortgage, it was said:

"In this case that paramount lien was foreclosed and a sale made to a stranger. This sale divested all prior liens, titles and grants, unless redemption was made under the statute. Such redemption was not made by the mortgagee, and the rights of the purchaser at the sale became, as against the mortgage, fixed and absolute."

Without quoting all that was said on this point it is made clear on that page and the next that the writer regarded the opinion of the court as being in conflict with the decision in *Case v. Lanyon,* supra. Referring to this case, it is said in the opinion herein:

"While the opinion discussed the redemption law, all that was said on that subject was unadulterated dictum."

And that the case was fully disposed of by the first paragraph of the syllabus. To me it is clear, both from the opinion and the dissenting opinion, that the court regarded that as the first important question to be determined, and did in fact decide it. If anything further is needed to show that the question of redemption was in this case it may be found in *Davidson v. Cattle Co.,* 76 Kan. 462, 92 Pac. 705, where, in referring to *Shrigley v. Black,* supra, it was said (Burch, J., speaking for the court, p. 466):

"In that case a sale with redemption had been made, and all parties to the litigation treated it as lawful. Then redemption was made by parties under obligation to pay the taxes for which the land had been sold, and *the only question open for decision was the effect of the redemption upon a mortgage lien.*" (Italics ours.)

In *Gille v. Enright,* 73 Kan. 245, 84 Pac. 992, Ridenour sued Mrs. Emmons and her husband to foreclose a mortgage given by them on land owned by the wife, and procured judgment, under which the property was sold by the sheriff to one Hobbs. No one redeemed by paying money to the clerk of the court (R. S. 60-3451). After the eighteen months' period of redemption expired a sheriff's deed was issued to Hobbs. Hobbs deeded to Enright. About a year after the sale by the sheriff, Gille obtained a judgment against Mrs. Emmons under which the same real property was sold by the sheriff to Gille and a sheriff's deed was issued to him. Thereafter Enright

sued Gille to quiet title. Defendant contended that Emmons had made some arrangements with Hobbs which amounted to a redemption out of court, and raised many questions to the validity of the sheriff's deed to Hobbs. The court said:

"We regard none of these questions as material. (Quoted the statute, now R. S. 60-3460.) The land was sold to Hobbs on May 22, 1899, and Gille obtained his judgment against Mrs. Emmons on May 3, 1900, eighteen days before his right to redeem as a creditor began. The lien of his judgment was inferior to the lien upon which the land was sold, and he had three months within which he could have redeemed it. It is clear that the second sale, under which he claims title to the land, was forbidden by the statute and was void." (Citing *Case v. Lanyon,* supra.) (p. 246.)

The statute which forbids the sale is R. S. 60-3455. Since there was no redemption by anyone in the manner provided by statute, the title of Enright was good as against Gille, at least on its face. Obviously, Gille recognized this and addressed himself to the equity jurisdiction of the court, sought to show agreements between Emmons and Hobbs subsequent to the sale at which Hobbs was the purchaser, and acts done by the parties, which the court should hold to be tantamount to a redemption under the statute. It well may be questioned whether such a showing could be made in any case, for, ordinarily, one who claims under a statute should show that he comes within its purview. But the court did not bother to decide that question and said it made no difference, and proceeded as above set out. It is clear the opinion was not a very complete analysis of the case before the court, and, so far as it relied on *Case v. Lanyon,* supra, it added nothing to that case.

In *Kueker v. Murphy,* 86 Kan. 332, 120 Pac. 362, the single question involved was the determination of the meaning of the word "costs" as used in what is now R. S. 60-3439. What was said in the case related primarily to that question.

In *Sigler v. Phares,* 105 Kan. 116, 181 Pac. 628, an owner of land executed a first and second mortgage on it. He was adjudged a bankrupt, and his trustee conveyed the land, subject to encumbrances, to Phares. The holder of the first mortgage sued to foreclose it, making Phares and the holder of the second mortgage defendants. The holder of the second mortgage, by cross petition, sought to foreclose it. Phares answered that the second mortgage had been paid, but made no defense as to the first mortgage. In March, 1915, plaintiff recovered a judgment, and the cause was

continued until September for hearing on the issues joined by the holder of the second mortgage and Phares. In May, 1915, an order of sale was issued on the judgment for plaintiff, under which the land was sold to plaintiff for about the amount of his lien, and the sale was confirmed. In September, 1915, the second mortgagee obtained a judgment that he had a second lien on the land for his claim and that he was entitled to redeem from the sale under the first mortgage. In April, 1916, Phares redeemed, and in June following the second mortgagee attempted to redeem, and deposited with the clerk of the court money sufficient for that purpose. In December, 1917, he brought an action asking that the land be sold to pay his lien, and recovered judgment declaring that his attempt to redeem was effective and ordering the sheriff to make him a deed. Phares appealed. This court reversed that judgment and held the attempted redemption of the second mortgagee ineffectual because of the owner's exclusive right to redeem within twelve months, the exercise of which vested in him a title free from the claims of the second mortgagee. In this case the second mortgagee was a party to the action to foreclose the first mortgage. He was entitled to have his claim adjudicated before the sale, if that could be done without prejudice to the plaintiff, as discussed on page 120 of the opinion. Being a party to the suit, and actually appearing, he had the opportunity to protect his rights by appropriate motions or pleadings, or by bidding at the sale, which he did not do. The court properly held that the redemption made the land free from the claims of his mortgage.

In *Moore v. McPherson*, 106 Kan. 268, 187 Pac. 884, McPherson, who owned real property, gave a first mortgage on it to Moore and a second mortgage to the bank. Moore sued to foreclose. The bank was a defendant, and by cross petition set up its second mortgage and asked to have that foreclosed. The McPhersons made no defense as to the first mortgage, but answered the cross petition to foreclose the second mortgage, raising defenses thereto. In September, 1916, judgment was rendered for plaintiff, foreclosing his mortgage. An order of sale was issued, and in November the sheriff sold the property for about the amount of the judgment on the first mortgage and costs. *The bank, which held the second mortgage, was the purchaser at that sale.* The sale was confirmed, all defendants were barred of all claims to the property, subject only to the McPhersons' right to redeem within eighteen months. In

March, 1917, the bank filed an amended cross petition, which the defendants answered, and in April, 1917, the issues raised between the bank and McPhersons were tried to the court and taken under advisement. About that time the bank filed an independent action against the McPhersons, which delayed the decision of the matter then under advisement until the trial of the second case, when both were decided in October, 1918, at which time the bank was given judgment on its cross petition in the first case, and in the second case the decree of sale in the first case was vacated, and it was adjudged that the bank was subrogated to the rights of the plaintiff and to have a lien on the property for the amount it had bid at the sale. This court held that the second action added nothing to the bank's right, that the bank's remedy was in the original case, and the only way it could protect itself was by seeing to it that the property sold for what it was worth, or for enough to satisfy its second lien, citing *Sigler v. Phares*, supra. The bank was a party defendant all the time, was in position to protect itself, was in fact the purchaser at the sheriff's sale, and it was perfectly proper to hold that it was bound by its acts.

In *Johnston v. Wear*, 110 Kan. 237, 204 Pac. 141, Brasier and wife, February 2, 1915, made a mortgage on land to Mickelberry, from whom they had just purchased it. The mortgage became the property of the Commonwealth Trust Company, which commenced an action to foreclose it in September, 1915, and obtained judgment, and in May, 1916, the land was sold thereunder to plaintiff, to whom a certificate of sale was issued, which was assigned to the Irrigation Loan and Trust Company, and a sheriff's deed was issued November 2, 1917. Johnston was a party to that action, having purchased the land from Brasier before it was commenced, and in October, 1917, paid to the clerk of the district court the amount necessary to redeem the land from the sale. Neither the sheriff nor the Irrigation Loan and Trust Company knew of that payment until after the sheriff's deed was issued, November 2, 1917, but discovered it soon thereafter, and the Trust Company tendered a deed to the clerk and demanded the money; but on instructions from Johnston he refused to pay it. Later the parties, or their attorneys, got together out of court and agreed on the delivery of the deed previously tendered to the clerk, the amount owing on the certificate of purchase was paid to the holder thereof, and Johnston withdrew the money which he had previously deposited with the court. In Sep-

tember, 1915, Wear, to whom Brasier was indebted, commenced an action against him in the federal court and caused a writ of attachment to be levied upon the mortgaged land, and in December, 1917 (note that this was after the sheriff's deed in the foreclosure suit), judgment was rendered in favor of Wear and against Brasier, the attached land sold under that judgment, and in November, 1919, a marshal's deed was issued to Wear. Wear did not attempt to redeem from the sale under the foreclosure in the state court. Thereafter Johnston sued Wear and others to recover the property. It was held that Wear's attachment lien ran from the time his attachment was levied, and that he had a right under the statute (R. S. 60-3441) to redeem the property from the sheriff's sale in that action. The statute (R. S. 60-3460) was cited, and it was said:

"The sale of the real property under the judgment in the federal court was made in violation of this statute." (Citing *Case v. Lanyon* and *Gille v. Enright,* supra.) (p. 242.)

It was pointed out that if no redemption had been made by Johnston the sheriff's deed would have conveyed the land to the purchaser free from the claims of Wear.

Defendant contended there had been a redemption under the statute by the defendant owner, or what, in legal effect, amounted to such a redemption. Plaintiff contended that the attempt to redeem was abandoned and the money deposited with the clerk of the court withdrawn, that the sheriff's deed to the Trust Company conveyed the title, which fact was recognized by the parties, and that thereafter the Trust Company conveyed to plaintiff. If anyone redeemed it was the defendant owner, not a creditor or mortgagee who had a junior lien. It is my judgment that the last sentence in syllabus 1, "The redemptioner takes the title that would have been conveyed to the purchaser at the sheriff's sale," is inaccurate if applied to a redemption by the defendant owner. The cases cited (p. 242 in the opinion), *Copper Belle Min. Co. v. Gleeson,* 14 Ariz. 548, and *White v. Leeds Importing Co.,* 72 Minn. 352, are cases in which the redemption was made by a creditor or mortgagee having a junior lien. They support the text of 27 Cyc. 1866 (cited in the brief to the court), where it is said:.

"If such a redemption is effected by a junior mortgagee or junior creditor, he succeeds to the position and all the rights of the foreclosure papers. . . ."

To the same effect is 42 C. J. 450. But with respect to a redemption by the defendant owner the general rule is that "a redemption

is to be considered as a payment for the mortgage or sale" (42 C. J. 448), and that is the rule adopted by this court in *Shrigley v. Black*, supra. This inaccuracy, no doubt, resulted from inadvertence, for the distinction is not pointed out in the briefs, nor was it very material for the determination of the case before the court. The action had been tried to a court (see opinion, p. 243), and no special findings of fact were made. The general finding for plaintiff resolved in his favor all facts on which there was conflicting evidence, including the question whether the deed given by the Irrigation Loan and Trust Company to Johnston was a conveyance, or a redemption out of court, and, as previously noted in the opinion, if it was a conveyance it cut off all claim of Wear to a lien upon the property by virtue of his attachment.

In *In re Estate of Wood*, 118 Kan. 548, 235 Pac. 864, an owner of mortgaged real estate died intestate. After his death the mortgage was foreclosed, the land sold, and the period of redemption fixed at eighteen months. Thereafter his administrator was granted leave to sell, to pay claims allowed against his estate, the rights which the heirs of decedent had under the statute with respect to the redemption of the land. It was held that the right of the heirs of the mortgagor to possession of the property during the period of redemption, and their privilege to redeem the property from such sale, was not subject to the sale on the order of the probate court for paying such debts. This ruling was predicated upon R. S. 60-3455, the last clause of which reads: ". . . that the right of redemption shall not be subject to levy or sale on execution." The proceeding was not strictly levy and sale on execution, but the obvious purpose of the statute brought that proceeding within its purview.

In *State Bank v. Marty*, 121 Kan. 753, 250 Pac. 321, Marty, in May, 1918, mortgaged to Booth a quarter section of land which he had just purchased from him, and in September, 1918, gave a mortgage on the same and other land to Rule. In June, 1920, Booth sued to foreclose his mortgage, naming Marty alone as defendant. He recovered judgment, under which the sheriff sold the property in October, 1920, to Booth for the amount of his claim. The sale was confirmed and the period of redemption fixed at eighteen months. In March, 1921, Marty gave Madden a mortgage on the "Booth quarter" and other land, and in December, 1921, he gave the State Bank a mortgage on the "Booth quarter" and other land. These mortgages were promptly recorded. No redemption was made or

attempted by Rule, Madden, or the bank. On the last day of the eighteen months' redemption period Marty redeemed the "Booth quarter" from the foreclosure sale, and eleven days later executed a mortgage to Griswold on that land. In an action involving the priority of these liens the trial court held that the mortgage liens of Rule, Madden and the State Bank on the "Booth quarter" were not extinguished by their failure to redeem, and each was a valid lien on the land in the order of their priority, and that Griswold was not entitled to a first lien on the "Booth quarter" by reason of the failure of Rule, Madden, and the State Bank to redeem the land as junior creditors, and rendered judgment accordingly. The party opposing those liens appealed. Rule and Madden were out of this case when it reached this court, and the question was whether the judgment that the State Bank had a lien on the "Booth quarter" should be sustained. Defendants contended that the lien of the bank was excluded because it failed to redeem from the Booth foreclosure sale, and relied upon the statutes, R. S. 60-3441 and 60-3460, and upon *Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406; *Gille v. Enright*, 73 Kan. 245, 84 Pac. 996; *Sigler v. Phares*, 105 Kan. 116, 181 Pac. 628; *Moore v. McPherson*, 106 Kan. 268, 187 Pac. 884, and *Johnston v. Wear*, 110 Kan. 237, 204 Pac. 141.

The court thought it not necessary to analyze those cases, that they were to be distinguished, and said:

"An entirely different situation is presented here. . . . A debtor owner having a right of redemption enters into a new contract." (p. 756.)

The opinion points out that Marty, for a valuable consideration, gave a mortgage on the land which contained covenants of warranty; that under R. S. 60-3455 the rights of the defendant owner may be assigned or transferred, and concluded that the mortgage, with the covenants of warranty, was such a transfer; that either Marty or the bank could have redeemed at any time within eighteen months from the sale, and that when Marty redeemed it inured to the benefit of the bank, and under all the facts Marty could not be heard to say that the mortgage lien had been discharged.

In this case the bank was a creditor of Marty. Its claim became a lien upon the real property before the time allowed for redemption by creditors, and remained a lien throughout that time. The bank, therefore, could have redeemed from the sheriff's sale. The opinion recognizes that, and so states. If the statute in question had been construed literally the bank's lien on the land would have been

wiped out. The court declined to construe the statutes literally, principally for two reasons: (1) The statutes do not take away from parties their rights to make contracts with respect to their property. This is a right inherent in the ownership of property. (2) Marty, for a consideration to him of more than $19,000, having executed a mortgage to the bank on the real property, which mortgage contained covenants of warranty, could not be heard to say, as against the mortgagee, that he had no title to the property. It was his duty under the contract to have good title, having warranted it. If he did not then have good title it was a duty he owed the mortgagee to get it. If at the time he executed the mortgage his title was imperfect, and he later acquired the outstanding interest, by whatever means he may have acquired it, such acquisition inured to the benefit of the mortgagee. This is a fundamental principle of law, recognized and applied in the law of deeds as well as in the law of mortgages.

In *Stacey v. Tucker,* 123 Kan. 137, 254 Pac. 339, an owner of real property executed a first mortgage thereon to Stacey and soon thereafter executed a second mortgage on the same property to Tucker. In January, 1924, Stacey brought suit to foreclose the mortgage, but did not make Tucker a party defendant. Stacey secured a judgment and bought the property at a sheriff's sale, and later obtained a sheriff's deed. He then brought action to quiet title. The holder of the second mortgage set it up by cross petition and asked to foreclose it. Plaintiff's demurrer to the answer and the cross petition was sustained. Plaintiff contended that the holder of the second mortgage had the right to redeem from the sale, and not having done so, was barred because land once sold on order of sale is not again liable for sale to satisfy a junior lien, and cited and relied on the statutes, R. S. 60-3440, 60-3441, 60-3460, and the decisions in *Case v. Lanyon,* supra, *Gille v. Enright,* supra, and allied cases. The holders of the second mortgage contended that the statutes and decisions on which the plaintiff relied were not applicable because the holder of the second mortgage was not a party to the foreclosure suit, and that the contentions of the plaintiff carried to ultimate conclusions would result in the taking of their property without due process of law. The court sustained this contention and held:

"Where a senior mortgagee brought suit, foreclosed his mortgage and purchased the property at sheriff's sale, not having made a junior mortgagee a

party: *Held,* (a) the junior mortgagee's rights were not affected by the proceedings; (b) the junior mortgagee was not barred for failure to redeem the land, and an action by the senior mortgagee afterwards to quiet title against the junior mortgagee was of no avail."

It was said in the opinion:

"The statutes and cases cited above are not applicable here, because the rights of the junior mortgagee were not adjudicated." (p. 138.)

It is correctly pointed out in the opinion of the court herein that the language of the statute, if literally construed, does not require the rights of the junior lien holder to be adjudicated. The language is: "Any creditor whose claim becomes a lien." (R. S. 60-3441.) The holder of the second mortgage was a creditor of the mortgagor and his claim had become a lien upon the property by virtue of the second mortgage. But the court declined to follow literally the language of this statute for the reason that the holder of the second mortgage was not a party to the foreclosure proceeding, and that it deprived him of his lien on the property without his day in court, and would result in the taking of his property without due process of law. More than one consultation was had on that case. I think every argument now made in the opinion of the court in this case was presented and considered. This court was well aware of what it was doing when it rendered the decision. Possibly the court in its opinion might have analyzed prior decisions of the court more fully than it did; possibly different language might have been used which would have made its conclusion more specific; but it is clear that the court declined to follow the literal language of the statute and intended to hold, and did hold, that one not a party to the action was not bound by the judgment and decree therein. This view of the decision was taken in *Garber v. Bankers' Mortgage Co.,* 27 Fed. (2d) 609, 610, where it was said:

"Reference is also made to section 60-3460, which shortly provides that real property, once sold on execution, shall not again be liable for sale for any balance due on the judgment, or for any lien inferior thereto. This section has been construed to only bar creditors who were parties to the suit. *Stacey v. Tucker,* 123 Kan. 137, 245 Pac. 339."

It is hardly accurate to say that the decision of the court in the case of *Case v. Lanyon,* supra, has been unmodified by judicial interpretation. The court specifically declined to follow it in *Shrigley v. Black,* supra, and in that case, and in *State Bank v. Marty,* supra, and in *Stacey v. Tucker,* supra, the court has refused to follow the

rule of literal interpretation of the statute which was applied in *Case v. Lanyon*. It is a fundamental principle of our jurisprudence that a party is entitled to his day in court. There is no reason to believe that the legislature intended to abrogate that principle by the enactment of the statute in question. What was said in *Sigler v. Phares*, supra, and *Moore v. McPherson*, supra, about the necessity of a junior lien holder bidding at the sale, is not opposed to this view, for in those actions the junior lien holders were parties to the action. The questions for determination in *Kueker v. Murphy*, supra; *Johnston v. Wear*, supra; and *In re Estate of Wood*, supra, are not very pertinent to the question here involved.

The opinion of the court herein seriously limits the authority of several decisions of this court, particularly *Shrigley v. Black*, supra; *Pool v. Gates*, supra; *State Bank v. Marty*, supra; and *Stacey v. Tucker*, supra, if indeed it does not overrule them. If these cases are to be overruled, we owe it to the trial courts, attorneys and litigants in this state to say so positively; or if their authority is to be limited only, to point out definitely the extent of such limitation.

In my opinion the judgment of the court below should be reversed with directions to enter judgment for the defendant.

I am authorized to say that Mr. Chief Justice JOHNSTON and Mr. Justice SMITH concur in this dissent.